## THE STATE v. KNOWLES, Appellant.

### Division Two, December 13, 1904.

1. **EMBEZZLEMENT: From Lodge: Indictment: Ownership.** An indictment charging a trustee or officer of a benevolent association with embezzling its funds entrusted to him, need not charge the ownership of the funds to be in a corporation or a partnership or an individual. If it charges that the lodge was a benevolent association and that the funds belonged to it and that defendant as its officer embezzled those funds, it sufficiently charges the ownership under the statute (sec. 1918, R. S. 1899).

2. ———: **Demand.** Refusal to account for trust funds on demand may be evidence of embezzlement, but demand is not essential where there was actual conversion and flight.

3. ———: **Benevolent Association: Trust.** A branch lodge of the Ancient Order of United Workmen is, within the meaning of the statute, a benevolent organization whose funds can be embezzled by one of its members.

4. ———: ———: **Parol Proof: Uncertified Book of Rules.** It is competent to show, by parol evidence, in a criminal case, that a certain benevolent organization was a corporation, and the relation it bore to a subordinate lodge of whose beneficiary funds the defendant was trustee, independently of the organization's book of laws. And if such proof is made by competent witnesses, no harm comes to defendant by the introduction of an uncertified book containing the rules and regulations for the government of the central order and the subordinate lodge, and their relations to each other, or by the fact that said printed book had not been compared with the original.

5. ———: ———: ———: **Book of Laws: Estoppel.** A local lodge and all its members by accepting a printed book of laws issued by the central organization, and by making it their laws and conforming to its regulations, are estopped from questioning its authority, whether it be certified or not, or compared with the original or not. Especially is a defendant who accepts an office at the hands of such local lodge under and by virtue of its authority as therein expressed estopped to deny that it is legal evidence.

6. **INSTRUCTIONS: Comment on Evidence.** Where the instruction is based on the evidence and leaves the jury free to find every fact necessary to determine the issue, and no more, and assumes no fact in issue, it is not a comment on the evidence.

7. ———: ———: **Effect of Evidence: Embezzlement.** Where the law fixes the weight or effect of evidence, there is no impropriety in the court declaring to the jury the legal effect of such evidence. So that, where an instruction simply advises the jury what facts, if established by the evidence, would justify them in finding a certain lodge was the owner of the money which the defendant is charged to have embezzled, there is no comment on the evidence.

8. **EMBEZZLEMENT: Beneficiary Insurance: Ownership.** The Grand Lodge under the name of the Ancient Order of United Workmen, being an incorporated concern, distributed its membership in unincorporated separate local lodges, and permitted each lodge to exact such dues as might be necessary to maintain the Grand Lodge, and required it to transmit to the Grand Lodge the beneficiary assessments which constituted the fund for the payment of death losses, and permitted it to retain all other funds save these beneficiary assessments. The members of the local lodge were required to pay their dues to an officer of their own choosing and it was his duty to turn over the dues so paid to a receiver who was its treasurer and bore the relation of trustee to that lodge, and for failure to turn over to the Grand Lodge moneys so received by him as such trustee the defendant was indicted for embezzlement. *Held*, that, under the circumstances, the local lodge had such a property right even in the beneficiary fund as made it the owner of such fund for the purposes of the prosecution.

9. ———: **Flight: Corpus Delicti.** An instruction that tells the jury that flight raises the presumption of guilt, and that if they find that after the alleged embezzlement the defendant fled from this State in order to avoid arrest and trial they may take this fact into consideration in determining his guilt or innocence, is not open to the criticism that it dispenses with proof of the *corpus delicti.*

10. **CORPUS DELICTI: Proof: Confession: Corroboration.** Full proof of the *corpus delicti*, independently of the confessions of defendant, is not required. It is sufficient that there be such extrinsic corroborative circumstances as will, when taken in connection with the confession, produce conviction of defendant's guilt.

11. **PRACTICE: Questions by Judge.** The right of the trial judge to ask a witness questions, in order to advise himself of the facts and to enable him to correctly instruct the jury and to gather the trend of the trial, is no longer open to doubt in this State.

12. ———: ———: **Raised by Motion for New Trial.** Where the only allusion in the motion for a new trial to the action of the

court in asking questions of witnesses is that "the court committed error at the trial in that the court did not give and accord to the defendant a fair and impartial trial," the appellate court is not authorized on appeal to consider the impropriety of the judge's questions. Such generalization is too broad to make it a basis of an exception.

13. ——: ——: ——: **How Exceptions Saved.** There is no distinction in principle between an exception to improper remarks of counsel and those of the judge. If deemed prejudicial they should be called to the attention of the court, at the time, and specifically.

14. ——: **Remarks of Prosecuting Attorney.** Unless objectionable remarks of the prosecuting attorney are made a ground for a new trial, they can not be reviewed by the appellate court.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

AFFIRMED.

*Cole, Burnett, Williams* and *M. A. Fyke* for appellant.

(1) (a) The indictment failed to properly allege the ownership of the property charged to have been embezzled. It did not allege the ownership in a corporation, or in a company, or in an individual or individuals, in any manner recognized as sufficient under the law. In passing on this question the rule of strict construction prevails. State v. Hall, 126 Mo. 585; State v. Patterson, 159 Mo. 98. It is necessary to allege the names of the copartners, if the company is a firm, or voluntary association; or state the corporation, if it is a corporation. State v. Jones, 168 Mo. 398. In such cases nothing is left in the charge to intendment. In an indictment nothing material shall be taken by intendment or implication. State v. Patterson, 159 Mo. 101; State v. Meyers, 99 Mo. 107; 2 Hawk. P. C., ch. 25, sec. 61. It is only the property of corporations, companies or individuals that is subject of embezzlement under the statute. State v. Patterson,

159 Mo. 98. The goods of a society or copartnership, not incorporated, or of two or more joint owners, may be described under the statute as the property of any member or part owner. Kelly's Criminal Law, sec. 649; R. S. 1899, sec. 2526. This indictment is not good under the statute. R. S. 1899, sec. 2526. The above statute is in itself in derogation of the common law and therefore to be strictly construed; yet by the statute itself, if Miners' Lodge No. 60 was a voluntary association or copartnership, it was and is necessary that the indictment should describe the property embezzled as the property of some member or part owner. On the trial the State made strenuous efforts, even by improper evidence, to show that the money charged to have been embezzled was not the property of the Grand Lodge, but was the property of the voluntary association designated in the evidence as Miners' Lodge No. 60. If the money charged to have been embezzled belonged to the "Grand Lodge," the corporation, then in order to be legally sufficient the indictment should have flatly charged that fact as to the ownership. If the money belonged to "Miners' Lodge No. 60," then the indictment is bad under the statute and the authorities above cited, since the indictment gives it (Miners' Lodge No. 60) no kind of legal status. A corporation is a distinct and independent "legal identity;" it is a legal absurdity to charge ownership in, or an offense against, "a part" of the corporation. As well might the same charge be made against "a part" of an individual. In the law as well as in physics, the whole is held to comprehend the part. "A civil suit can not be brought against a benevolent association in its association name. But the name of the members or some of them at least must be set forth." State v. Patterson, supra; Olery v. Brown, 51 How. Prac. 92; Paul v. Keystone Lodge, 3 Weekly Notes Cas. 408; Fritz v. Muck, 62 How. Prac. 69; State v. Jones, 168 Mo. 398; State v. Horned, 76 S. W. 953; State v. Gas-

sard, 77 S. W. 473; Revis v. Lamme & Bro., 2 Mo. 208. The ownership of property embezzled must be alleged in the information. State v. Stearns, 42 Pac. 615; State v. Mecham, 33 So. 983; State v. Roubbs, 26 Am. St. 179; Whitney v. State, 73 N. W. 696; People v. Carter, 81 N. W. 924; 73 Md. 447. (b) It does not appear, either in the indictment or in the proof, as to the place where and the time when the alleged embezzlement or larceny took place. In criminal trials it must always be shown that the offense of which the prisoner is convicted was committed within the jurisdiction of the court. State v. Burns, 48 Mo. 438; Gordon v. State, 4 Mo. 375; State v. McGinniss, 74 Mo. 246; State v. Schuerman, 70 Mo. App. 518; State v. Sauerburg, 64 Mo. App. 129; State v. Tissing, 74 Mo. 72; State v. Knolle, 90 Mo. App. 238. (c) It does not appear that any demand was ever made by the Grand Lodge upon defendant. (d) It does not appear from the allegations or from the proof that Miners' Lodge No. 60 is a benevolent organization, or comes within the definition or provisions of the laws of this State as to such an organized body. R. S. 1899, secs. 1408, 1409, 1410 and 1918. A legal organization is something more than a mere association, and it is the conversion of the funds of the former and not of the latter that is made embezzlement by the statute. R. S. 1899, sec. 1918. (2) There was no legal evidence showing the laws, rules and regulations of the A. O. U. W., or of subordinate lodge, Miners' Lodge No. 60. The laws and rules in the pamphlet do not purport to be the original laws and rules as passed by the Grand Lodge, and they are not the original records of the Grand Lodge. They were not copies, properly certified, so as to make them admissible in evidence under the law expressly provided for such cases. R. S. 1899, sec. 3101; Chadwick v. Order of Triple Alliance, 56 Mo. App. 474. Where the records of a cor-

poration are in existence, and can be obtained, parol evidence is inadmissible to prove the contents thereof. Coffin v. Collins, 17 Me. 440.    The testimony of an officer of a corporation is inadmissible to prove the facts appearing upon the record, where the records can be produced.    Haven v. New Hampshire Insane Asylum, 13 N. H. 532, 38 Am. Dec. 512; Lumbard v. Aldrich, 8 N. H. 31, 28 Am. Dec. 381; Thayer v. Ins. Co., 10 Pick. 326.    To prove the acts of a corporation, its books are the best evidence, and ought to be admitted on proper authentication, whenever those facts are to be proved.    Highland Turnpike Co. v. McKean, 10 Johns. 154.    Parol evidence by an officer of a corporation to prove its by-laws is inadmissible, as not being the best evidence.    Lumbard v. Aldrich, 8 N. H. 31, 28 Am. Dec. 381; Union Gold Min. Co. v. Rocky Mountain Natl. Bank, 2 Colo. 565; People v. Oakland County Bank, 1 Doug. (Mich.) 282.    (3)    Instruction 4 was erroneous, because it is a comment upon the evidence; it invaded the province of the jury; it segregates and comments upon the weight and sufficiency of a few facts to establish a fact decisive of a question of fact, without which no verdict could be found or stand against the defendant; it embodies an effort by the trial court to control the judgment of the jury; it singles out specific facts in such a way as to give them undue prominence and does not even require the jury to consider such facts in connection with the other facts and circumstances in evidence; it directs the jury that an inference was warranted from certain evidence, where and when if such inference was warranted, the law presumes the jurors more competent to draw it than the judge; the instruction is the argument of counsel for the prosecution, not an instruction to the jury in writing on a point of law arising in the cause; it is not a declaration of law tending to aid the jury toward a proper verdict after finding the facts; its object and effect was to control the jury in their find-

ing on issues of fact. This character of instruction has been prohibited by the statutes, and persistently' denounced by the Supreme Court. R. S. 1899, sec. 2639; State v. Hundley, 46 Mo. 414; State v. Sivils, 105 Mo. 530; State v. Grugin, 147 Mo. 55; State v. Smith, 53 Mo. 271; State v. Hibler, 149 Mo. 478; State v. Rutherford, 152 Mo. 124; Chouquette v. Barada, 28 Mo. 499; State v. Dunn, 18 Mo. 423; State v. Fairland, 121 Mo. 148; Railroad v. Stock Yards, 120 Mo. 559; Carroll v. Paul's Admr., 16 Mo. 226; Miller v. Marks, 20 Mo. App. 269; Jones v. Jones, 57 Mo. 138.  (4)  "Extrajudicial confessions of a prisoner are not sufficient to warrant a conviction, without proof *aliunde* of the *corpus delicti*." State v. Scott, 39 Mo. 424; Robinson v. State, 12 Mo. 592; Hill v. State, 11 Tex. App. 132; Brown v. State, 32 Miss. 433; Kennon v. State, 11 Tex. App. 356; Sam v. State, 32 Miss. 347; Williams v. People, 101 Ill. 382; Johnson v. State, 59 Ala. 37; State v. Knowles, 48 Iowa 598; People v. Lane, 49 Mich. 340; Mose v. State, 36 Ala. 211; United States v. Boese, 46 Fed. 917; Butler v. Commonwealth, 2 Duvall 435; Commonwealth v. Hanlon, 8 Phila. 401; People v. Jones, 31 Cal. 565; Gray v. Commonwealth, 101 Pa. St. 380; Jenkins v. State, 41 Miss. 582; Smith v. State, 21 Gratt. 809; People v. Ah How, 34 Cal. 218; United States v. Williams, 1 Clif. C. C. 5; State v. Keller, 43 Miss. 472; Andrews v. People, 117 Ill. 195; State v. Laliyer, 4 Minn. 368; People v. Mondon, 4 N. Y. Crim. Rep. 112; People v. Badgley, 16 Wend. 53. "The credit to be given to a confession is a question for the jury." Commonwealth v. Galligan, 113 Mass. 202.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1)  The crime of embezzlement, as known to our laws and institutions, has a statutory origin. No such offense existed at common law. It therefore follows

that the sufficiency of the indictment for this crime is controlled largely by the wording of the statute. It has been held that indictments for such crimes are sufficient when the language of the statute is followed. 7 Ency. Pl. and Pr., p. 416; Commonwealth v. Bennett, 118 Mass. 443; State v. Crump, 23 Tex. App. 615; People v. Kerr, 110 Ill. 627; State v. Reinhart, 26 Ore. 466; United States v. Simmons, 96 U. S. 360; People v. Tomlison, 66 Cal. 344; State v. Nolan, 111 Mo. 473; State v. Adams, 108 Mo. 208. The indictment in question follows, as near as may be, the language of section 1918, upon which it is based. (2) It is also asserted by defendant that there is a failure to properly allege the ownership of the property charged to have been embezzled, in that there was no allegation as to the ownership of the property in the corporation, company, or the individual or individuals in such manner as is recognized as sufficient under the law. The authorities which are cited by defendant's counsel are not to be controverted. It is sufficient, however, to say that none of them apply to the case at bar. The point is made that the indictment alleges the Grand Lodge of the Ancient Order of United Workmen to be a corporation, and inasmuch as the indictment states that the money did not belong to the Grand Lodge, but to Miners' Lodge No. 60, which is a local branch organization of the parent lodge at Joplin, that there should also be an averment to the effect that this local lodge was a corporation, and if not incorporated, then the names of some or all of the members should be set out so as to inform the defendant of the exact charge that was preferred against him. In this connection, we call the court's attention to the language of the statute upon which the indictment is based, which makes one guilty of the crime of embezzlement for converting to his own use money or property belonging to any benevolent, trade or religious organization, while the accused is an officer or member of such organization. This part of

the section in question was doubtless enacted by the Legislature for the purpose of extending the criminal arm of the court so as to include in the crime of embezzlement certain acts regarded as wrong, and which are of a criminal character, having practically all of the elements of a crime, yet which could not be successfully prosecuted, because of the then existing rules of law which courts had previously laid down and followed. When legislation upon the crime of embezzlement was first adopted, courts held that one could not be guilty of the crime of embezzlement for converting property in which the accused had a certain interest, and there are a number of decisions in other States which hold that where a person is a member of some organization and has a common interest in its funds, he can not be convicted of embezzling these funds, so that it is readily observable that this statute was enacted to bring about the conviction and punishment of persons who occupy a position of confidence or trust in an association of this character, and make way with, for their own use and benefit, the property and funds entrusted to them. Second. This provision of the statute was adopted for the evident purpose of relieving to a large extent the embarrassments that are cast upon a prosecuting officer in formulating the pleadings and setting out the crime alleged in such language as would be satisfactory to the courts and at the same time sufficiently apprise the accused of the crime with which he was charged. Based upon this proposition we reach the conclusion that it is unnecessary to set out the name of any individual or individuals who may be members of an organization such as is referred to by the statute, the name of the organization itself being sufficient, and so far as the pleading at criminal law is concerned it is as effective when pleaded in the name of the organization, as though it were a corporation; in other words, the organization stands upon the same footing as does a corporation, and there is no more necessity of setting out the

names of the lodge members than there is of alleging by proper averments the names of the various stock-holders and officers of a corporation. It has been repeatedly held that in case the money of a corporation is embezzled, it is sufficient to mention the name of the corporation only. The defendant cites the case of State v. Patterson, 159 Mo. 99. This case is not in point for the very apparent reason, as above stated, that a benevolent organization stands on the same footing as a corporation; it is true the court in that case declared the indictment bad because there was no showing made in the indictment that the property embezzled belonged to a corporation or a copartnership or to a number of individuals, it being necessary, as stated in that case, to aver the corporate existence of the company, if a corporation, or the names of the copartners, if a copartnership. It is not alleged in the indictment that the money embezzled belonged to the Grand Lodge, but it is alleged that it did belong to Miners' Lodge No. 60, Ancient Order of United Workmen, a benevolent organization of Joplin, and this the proof shows. It might, therefore, be held that the averment with reference to the corporate existence of the Ancient Order of United Workmen was mere surplusage and has no bearing upon the sufficiency of the indictment, one way or the other.

GANTT, P. J.—This is an appeal from a judgment of the circuit court of Jasper county, Missouri, sentencing the defendant to the penitentiary for a term of two years from the second day of December, 1902.

The defendant was indicted for embezzlement. The indictment was returned into court on the fifteenth day of December, 1900, and is as follows:

"State of Missouri, county of Jasper, ss.:

"In the Jasper County Circuit Court, December term, 1900.

"The grand jurors for the State of Missouri impaneled, sworn and charged to inquire within and for the body of the county of Jasper and State aforesaid, upon their oath, present and charge that on or about the— day of —, 1906, at the county of Jasper and State of Missouri, John B. Knowles was a member of Miners' Lodge No. 60, Ancient Order of United Workmen, a benevolent organization of Joplin in said county, the objects and purposes of said organization being to render and secure to its members and their families financial and other mutual aid and assistance in cases of sickness and death, and being a branch or subordinate lodge of the Ancient Order of United Workmen, an incorporated benevolent organization, and the said John B. Knowles being then and there an officer of said Miners' Lodge No. 60, to-wit, receiver, duly appointed, elected and qualified according to the laws, rules and regulations of said Ancient Order of United Workmen and of the by-laws of said Miners' Lodge No. 60, by virtue of his said membership, office and official position in said Miners' Lodge No. 60, did then and there receive and have in his possession, care, custody and control the moneys of said Miners' Lodge No. 60, to a large amount, to-wit, to the sum of seven hundred and fourteen dollars and sixty-nine cents, and was by virtue of his said membership, office and official position in said Miners' Lodge No. 60, trusted with the safe-keeping and disbursement of said moneys belonging to and being the property of said Miners' Lodge No. 60, according to the laws, rules and regulations of said Miners' Lodge No. 60 and of said Ancient Order of United Workmen, and being so entrusted with and having the care, custody and control as aforesaid of said moneys, he, the said John B. Knowles, the said moneys, to-wit, the said sum of $714.69 in money, of the value of seven hundred and fourteen and 69-100 dollars, of the moneys and property of and belonging to said Miners' Lodge No. 60, by him, the said John B. Knowles, received and

taken into his possession, care, custody and control by virtue of his said membership, office and official position in said Miners' Lodge No. 60, as aforesaid, for safe-keeping and disbursement, as aforesaid, did then and there unlawfully, feloniously and fraudulently embezzle, make way with and convert to his own use and said sum of money in the manner and form aforesaid feloniously did steal, take and carry away, and he the said John B. Knowles, then and there on said day of 1896, did flee from the State of Missouri, from justice and was not from said date until the — day of April, 1900, an inhabitant of said State nor usually resident therein, against the peace and dignity of the State.''

The defendant was duly arraigned and pleaded ''not guilty.'' The cause was continued from time to time until the December. term, 1902, at which time a jury was impaneled and the evidence heard and defendant convicted. Motions for a new trial and in arrest of judgment were filed, heard, and overruled. The time for filing the bill of exceptions was extended until February 15, 1904, and the transcript lodged in this court and docket fee paid March 24, 1904. The evidence tends to prove that during the year 1896 and for all the time since, there was and has been a branch or subordinate lodge of the Ancient Order of United Workmen at Joplin, Missouri, known as ''Miners' Lodge No. 60.'' Of this lodge the defendant Knowles was the duly elected and acting receiver, during the year 1896, and particularly throughout the months of July, August, September and October of said year. According to the testimony the Ancient Order of United Workmen of Missouri was and is an incorporated benevolent association and Miners' Lodge No. 60 is a subordinate or branch thereof located at Joplin, Missouri, which had its lodge room at the corner of Seventh and Main streets in said city. The defendant was a member of said Miners' Lodge and resided at the time and for a

long time prior thereto in Joplin, Jasper county, Missouri.

Among other officers of this lodge there was a recorder, whose duty it was to keep accurate minutes of the proceedings of the lodge which he was required to record in a book provided for that purpose. It was his duty to attest all orders drawn on the receiver and make the semiannual reports to the Grand Lodge. There was also an officer known as a financier, whose duty it was to keep a full and correct account between the lodge and each member, receive all moneys for the lodge, and to pay the same to the receiver before the close of each meeting, taking his receipt therefor.

The receiver was and is required to receive from the financier all moneys received from the lodge, giving his receipt therefor; pay all orders drawn on him by the master workman, attested by the recorder. He was and is required to keep a separate and distinct account of the beneficiary fund, and upon the receipt of notice through the lodge from the grand recorder, to forward a draft, payable to the order of the grand recorder, *or otherwise, as the lodge may determine,* for the amount of the beneficiary fund; a receipt from the grand recorder for the fund so forwarded, and excess required on each assessment, shall be his voucher to the lodge. Whenever he deposits in any bank, or other place of security, any funds of his lodge he must do so in his official capacity as receiver of the lodge.

The evidence tends to show that defendant as receiver of the Miners' Lodge No. 60 had received about $714.69 during September and October, 1896, for which he had failed to account, a large proportion of which sum belonged to what is known as the beneficiary fund; that he had stated to a member of the lodge, and a district deputy that he had sent the money to the Grand Lodge at St. Louis, but had not received a receipt therefor. He told Mr. Arnold, the district deputy of Southwest Missouri, whose duty it was to examine and super-

vise the books of the different lodges in that section, when he demanded of defendant his report to the grand recorder, that he had sent in this money. Mr. Arnold told him the grand recorder had not received it; that Miners' Lodge No. 60 had been suspended because it had not transmitted the beneficiary fund; and that he was going to St. Louis, and if the money was not there he would write defendant and tell him what the trouble was and have him hurry on the money. Arnold went to St. Louis and found the money had not been received and returned to Joplin and ascertained defendant was gone, and never saw him any more until he was brought back from Indiana under arrest in 1899.

The defendant received the money at Joplin, Jasper county, Missouri. The lodge was compelled to and did make up the amount of the beneficiary fund, and paid it over to the grand recorder of the grand lodge. Arnold demanded of defendant to make his report, accompanied by the money, about the middle of November. Defendant was behind with his reports. The money is required to accompany each report.

J. J. Cofer also testified that the defendant failed to send in to the Grand Lodge the report and beneficiary dues for September and October, 1896, and that the lodge made up that money, and sent it in and was reinstated in November, 1896. The amount was something over $600. This witness testified to a conversation with defendant on his return from Indiana in 1899 or 1900. Defendant said he didn't get away with the $714; that it was only about $665 or $666 that he was short.

Dr. Tyler testified to a conversation he had with defendant after his return from Indiana in which defendant said he didn't deny that he had made a fool of himself and squandered the money. He said: "I squandered the money, except $1.75 or $2.75 which is yet in Cunningham's bank. Every cent of it I blew in and bet on the election and set them up with."

This witness testified to paying up his proportion of the lodge's shortage caused by defendant's failure to pay over the beneficiary fund.

The written receipts of defendant as receiver to the financier of the lodge for October 1, 1896, to the amount of $58, and October 19th for $97 and October 28, 1896, for $99.50 and $99.75, and November 5, 1896, for $7, were offered and read in evidence. His signature to these receipts was shown to be genuine.

Everett Jenkins, another member of the lodge, testified to a conversation with defendant after his return from Indiana in which defendant said the amount of his shortage to the lodge was $665, in place of $714, the amount the lodge claimed. Witness testified that of his own knowledge the defendant had received lodge funds as receiver to the amount of $715.

Defendant talked to him after his return very freely about his shortage and said he went under an assumed name in Indiana, the name of John Knox.

He left Joplin on Sunday after the general election in November, 1896, and he never returned until arrested in the fall of 1899.

John M. Gray testified to defendant leaving Joplin in November, 1896, and to their efforts to find him, and that he never saw him any more for about three years when he was brought back under arrest. Defendant's family continued to reside in Joplin for three or four months after he left. His information was that they lived in Kansas City afterwards.

T. J. Cofer testified to a conversation with defendant after his return in 1899, in which defendant said he spent one winter in Oregon on a farm and worked a long time in Illinois. Didn't remember what he said he was doing in Indiana when he was arrested.

Dr. Tyler testified defendant told him he had travelled from Arizona to Ohio, spending a few days in each place, just long enough to get money to move on. He said he had been in Missouri only a few weeks at a

time. He knew too many people. He said he was in Kansas City twice. Witness heard he had worked on the Pittsburg & Gulf, and asked him if this was true, and he said no, the nearest he had been to Joplin was Kansas City twice and then only for a short time.

The foregoing, together with the copy of the general laws for the government of the Grand Lodge and subordinate lodges of the Ancient Order of United Workmen, was substantially the case made by the State.

For the defendant Dr. A. J. Yeager testified that he was a member of Lodge No. 34 of A. O. U. W. at Joplin. Had been master workman at one time, and was familiar with the rules and regulations of the lodge. He testified that after the money of the beneficiary fund was paid over to the local or lodge receiver, it became the money of the Grand Lodge; that the local lodge could not draw any warrants or drafts on that fund. Neither could the Grand Lodge draw on it. According to the regulations the Grand Lodge would send out notices for the money, to be sent in at certain times and it is the duty of the receiver to send it in to the Grand Lodge. This witness identified the book of laws in evidence as the only laws governing the order. It is the by-laws sent out by the Grand Lodge governing subordinate lodges. They are all contained in this book. The blanks therein are to be filed in with different laws governing local lodges, the by-laws of the local lodges. They or some of them fill in these blanks. On cross-examination he stated the manner of transmitting the beneficiary fund to be that the financier and receiver get together and make up their reports as to the amount of money to be sent in. The receiver has the money in bank and he goes there and draws a check or draft and sends it to the Grand Lodge. It is the duty of the receiver to send in the amount of the beneficiary fund. The subordinate lodge never draws a warrant on that amount or hardly ever. After thinking it over I see

where the only thing that the receiver has is his receipts from the Grand Lodge. No warrant is drawn by the subordinate lodge. When we audit the receiver's books we check his receipts from the Grand Lodge, count that up and see how much money he has on hands, if any. The general fund of each lodge is different; that belongs to the local lodge and it directs warrants on that fund.

John Wagner, a member of Lodge No. 34 A. O. U. W., Joplin, gave it as his opinion that after the beneficiary funds went into the hands of the local receiver they belonged to the Grand Lodge. He stated that the method as to the beneficiary fund was that the financier collected from the members first the amount of their dues and turned it over to the receiver of the local lodge and takes his receipt therefor, and then the receiver on stated times each month forwards that money to the grand recorder. Before he sends it, however, he gets notice from the grand recorder of the amount due the Grand Lodge for the month, and then the receiver sends him the money usually or regularly on the twenty-eighth day of each month.

The beneficiary fund remains in the Grand Lodge after it receives it, subject to death payments. The general fund of each subordinate lodge belongs to it.

Mrs. Knowles, wife of defendant, testified that she was living in Joplin in 1896 and moved to Kansas City in 1898. Lived at 1204 Highland until the year before she testified, when she moved to Sixteenth street; that her husband during that time was at work on public works, railroad work, and when not so engaged was at home. His home was in Kansas City and that was his usual place of residence since 1896. He was in Joplin between November and December, 1898. Was there in January, 1897. She received letters from him mailed at Kansas City. His address was general delivery. Her husband, the defendant, went to Indiana to visit her

brother. While there worked in the insurance business. His daughter lived in Indiana.

The instructions outside of the usual formal instructions on the presumption of innocence, reasonable doubt and credibility of the witnesses, were as follows:

"2.    The court instructs the jury that if you find from the evidence in this cause that during the months of September, October and November, 1896, at the county of Jasper and State of Missouri, the defendant, John B. Knowles, was a member of Miners' Lodge No. 60, Ancient Order of United Workmen, and that said lodge was then and there a benevolent organization of Joplin, in said county of Jasper, and that the objects and purposes of said organization were to render and secure to its members and their families financial aid and assistance in cases of sickness and death, and that the said lodge was then and there a branch or subordinate lodge of the Ancient Order of United Workmen, and that said Ancient Order of United Workmen was then and there an incorporated benevolent organization, and the defendant, John B. Knowles, was then and there an officer, to-wit, the receiver of Miners' Lodge No. 60, duly elected and acting as such officer and that by virtue of such membership, office and official position in said Miners' Lodge No. 60, he, the said defendant, did then and there receive and have in his possession, care, custody and control the moneys of the said Miners' Lodge No. 60, of the amount of $714.69, as alleged in the indictment, or any portion thereof to the amount of $30 or more, and that said defendant was then and there, by virtue of his said membership, office and official position in said Miners' Lodge No. 60, entrusted with the safe-keeping and disbursement of said money, and that said money was then and there the property of and belonged to said Miners' Lodge No. 60, according to the laws, rules and regulations of said Miners' Lodge No. 60, and of said Ancient Order of United Workmen, and that being so entrusted and hav-

ing the care, custody and control as aforesaid of said money, or any part thereof, to the amount of $30 or more, the defendant did then and there at the county of Jasper and State of Missouri feloniously, unlawfully and intentionally embezzle, make way with and fraudulently convert said money or any portion thereof to the amount of $30 or more to his own use without the assent of the said Miners' Lodge No. 60, and that said money so embezzled, made way with and converted to his own use by the defendant then and there belonged to said Miners' Lodge No. 60, and if the jury further find from the evidence that the defendant, John B. Knowles, afterwards, in the months of November, 1896, did flee from justice by then and there fleeing from his usual place of residence in Jasper county and concealed himself and remained away from his usual place of residence in said county and remained concealed for the purpose of avoiding arrest and prosecution on the charge of embezzlement contained in the indictment in this cause, and if you further find that he continued to flee from justice and so conceal himself until the month of December, 1899, at which time he was arrested in the State of Indiana, and brought back to Jasper county, Missouri, then you will find the defendant guilty of embezzlement and assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than five years.

"3. The court instructs the jury that the indictment in this cause was returned and filed in the court on the fifteenth day of December, 1900, and charges the defendant with the crime of embezzlement in the year, 1896, more than three years before the filing of the indictment in this cause. Although the jury may find and believe from the evidence that the defendant did commit the crime of embezzlement in the year 1896, as charged in the indictment in this cause, yet unless they further find from the evidence that the defendant afterwards fled from justice, as stated in instruction

numbered 2, you will find the defendant not guilty for the reason that the crime would be barred by the statute of limitations.

"4.   If the jury find from the evidence in this cause that the Ancient Order of United Workmen was, in the year 1896, an incorporated benevolent organization, and that Miners' Lodge No. 60 was a branch or subordinate lodge of said organization and a part thereof, and that under the laws, rules and regulations of the Ancient Order of United Workmen the assessments constituting the beneficiary fund were paid by the members of said Miners' Lodge No. 60 to the financier of said lodge, and by him delivered to the receiver of said lodge, and that it was the duty of the receiver to send the same to an officer of the said Ancient Order of United Workmen at St. Louis under the order and direction and authority of said Miners' Lodge No. 60, and that the said Ancient Order of United Workmen held the Miners' Lodge No. 60 responsible for the said funds until so forwarded and received, and had the right and power to suspend the said Miners' Lodge No. 60 on the failure of said Miners' Lodge No. 60 and its receiver to forward the same to the officer of said Ancient Order of United Workmen at St. Louis, and to continue such suspension of said Lodge No. 60 until said lodge or its receiver should so forward said money to such officer at St. Louis, then the jury would be justified in finding that the money so paid by the members of Miners' Lodge No. 60, so in the custody of its receiver and so held by him until forwarded to St. Louis as aforesaid, was the money of said Miners' Lodge No. 60.

"5.   Flight raises the presumption of guilt, and if the jury believe and find from the evidence that the defendant, after the alleged commission of the embezzlement charged in the indictment, fled from the State of Missouri for the purpose of avoiding arrest and

trial for said offense, you may take this fact into consideration in determining his guilt or innocence."

The court at the request of defendant gave the following instructions:

"4. The court instructs the jury that unless you find from the evidence beyond a reasonable doubt, that the money described in the indictment was, at the time of the commission of the alleged embezzlement, the property of Miners' Lodge No. 60, then you should acquit the defendant.

"6. The court instructs the jury that the jury can not and must not find the defendant guilty in this case unless there has been proven by the evidence in this case to the satisfaction of the jury, beyond a reasonable doubt, the following facts:

"First. That moneys belonging and being the property of Miners' Lodge No. 60, according to the laws, rules and regulations of said Miners' Lodge No. 60 and of the Ancient Order of United Workmen, were, by the defendant, unlawfully and fraudulently made away with or converted to his own use on the — day of — —, 1896, at the county of Jasper, in the State of Missouri.

"Second. And also that the defendant, John B. Knowles, being then and there an officer of said Miners' Lodge No. 60, to-wit, receiver, on the — day of — —, 1896, did then flee from justice as stated in instruction numbered 2, given on behalf of the State, and unless such proof has been made by the evidence in this case, it is the duty of the jury to return a verdict for the defendant.

"7. The court instructs the jury that although they may believe from the evidence that the defendant may have been absent from Jasper county, Missouri, or the State of Missouri, at a certain time or times between the dates on the — day of — —, 1896, and December 15, 1900, yet these facts, if true, do not prove

any criminality on the part of the defendant, unless the jury believe from the evidence, beyond a reasonable doubt, that the defendant was so absent for the purpose of avoiding prosecution or was by so doing fleeing from justice.

"In this connection the court further instructs the jury that the defendant, as a citizen of the State, under the Constitution and laws of the State and under the Constitution of the United States, had a right to change his abode in the pursuit of his ordinary avocations, and for the purpose of visiting his daughter in the State of Indiana or elsewhere."

To the giving of those for the State defendant duly excepted, and to the refusal of number 6 asked by defendant in the following words defendant excepted:

"6.  The court instructs the jury that the jury can not and must not find the defendant guilty in this case, unless there has been proven by the evidence in this case to the satisfaction of the jury beyond a reasonable doubt the following facts:

"First.  That moneys belonging to and being the property of Miners' Lodge No. 60, according to the laws, rules and regulations of said Miners' Lodge No. 60 and of the Ancient Order of United Workmen were, by the defendant, unlawfully and fraudulently made away with and converted to his own use on the — day of ——, 1896, at the county of Jasper in the State of Missouri.

"Second.  And also that the defendant, John B. Knowles, being then and there an officer of said Miners' Lodge No. 60, to-wit, receiver, on the — day of ——, 1896, did flee from the State of Missouri from justice, or was not from said date until the 15th day of December, 1900, an inhabitant of said State nor usually resident therein, as stated in instruction numbered 2 given on behalf of the State, and for the period of, at the least of eleven months; unless such proof has been

made by the evidence in this case, it is the duty of the jury to return a verdict for the defendant.''

Other facts may be stated in the course of the opinion as may be necessary to elucidate the point of decision.

I.   The indictment in this case is for an offense defined in section 1918, Revised Statutes of Missouri 1899, which provides, among other things, that if any officer or member of any benevolent organization shall convert to his own use, in any manner whatever, or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public moneys, or any moneys that may have come to him or them by virtue of his or their office or official position, or by virtue of any trust reposed in him or them, he shall, upon conviction, be punished in the manner prescribed for stealing property of any kind measured by the value of the property so taken or secreted.

The sufficiency of the indictment is questioned for various reasons.  Chief among which is that it does not properly allege the ownership of the moneys alleged to have been embezzled by defendant, in that it fails to allege the ownership in a corporation or in a partnership or in an individual.

This contention is based upon decisions of this court as to the essentials of an indictment for the violation of section 1912, Revised Statutes 1899.  As that section specifically defines the persons the embezzlement of whose money, goods, and rights in action shall constitute an offense under that section, it has been held that it is necessary to allege if the property belongs to a partnership, the membership of the partnership, and if a corporation, that it is a corporation.  [State v. Patterson, 159 Mo. 98; State v. Jones, 168 Mo. 398; State v. Horned, 178 Mo. 59.]

But this indictment is drawn under section 1918

which makes it embezzlement for any officer or member of *any* benevolent organization to convert to his own use in any manner whatever the moneys that may have come to him by virtue of his office or official position or by virtue of any trust reposed in him or them or which may be in his possession, care or control by virtue of his office or trust.

It will be observed that the offense denounced by this section is not restricted to embezzlements by officers and trustees of any incorporated corporation or benevolent organization, but is broad enough to embrace an embezzlement by an officer of *any* benevolent organization whether incorporated or not.

Prior to its enactment it was the settled rule of common law that one partner could not be guilty of embezzling the partnership funds, because a man could not be guilty of stealing his own property or property of which he was the joint owner, and a like ruling has generally obtained as to members of organizations having an interest in their funds. Thus in 10 Am. and Eng. Ency. of Law (2 Ed.), 985, it is said, "If it appears that the accused has any interest in the property jointly with another he can not be convicted of embezzlement in respect to such property." [Reg. v. Wortley, 2 Den. C. C. 333; Reg. v. McDonald, Leigh & C. 85; Holmes' case, 2 Lew. C. C. 256; 10 Am. and Eng. Ency. Law (2 Ed.), 1007, note 1, and cases cited.]

To remedy this evil was, we think, the purpose of the Legislature in making the statute broad enough to cover embezzlements by any officer or member of any benevolent organization. The language of the statute is comprehensive enough to cover embezzlements by any officer or member of any benevolent organization, and certainly it is not less reprehensible and criminal in an officer or trustee of an unincorporated benevolent organization to embezzle and convert its funds raised for a charitable and praiseworthy purpose and entrusted to him than it is to steal and convert the funds of an in-

corporated society. The statute has not restricted its condemnation to the latter class and we have no disposition to do so, because we think the evil is as great if not greater in the one than the other.

It follows that the objection levelled at the indictment because it does not charge the Miners' Lodge No. 60 was an incorporated benevolent organization is not well taken. It is averred that it was then and there a benevolent organization, and this is sufficient for the purpose of charging its own receiver or trustee with the corrupt conversion of its funds entrusted to his keeping and care. The indictment follows the statute and sufficiently individuates the crime, the relation the defendant bore to Miners' Lodge No. 60, and the conversion of the moneys of the lodge received by him by virtue of his official relation to the lodge. The cases of State v. Patterson, 159 Mo. 98; State v. Jones, 168 Mo. 398, and State v. Horned, 178 Mo. 59, in no manner conflict with the conclusion we have reached in this case. Those cases are based on violations of a different section (1912) of the Revised Statutes and properly declare the law on the facts upon which they are based.

II. Again it is urged that neither in the indictment nor in the testimony does it appear at what place or when the embezzlement took place. The objection ignores the charge in the indictment that on or about the — day of —, 1896, at the county of Jasper and State of Missouri "the defendant was a member of said Miners' Lodge No. 60 and that being *then and there* an officer of said lodge, to-wit, receiver, duly elected, appointed and qualified according to the laws and regulations of the Ancient Order of United Workmen and the by-laws of said Miners' Lodge No. 60, by virtue of his membership, office and official position he *then and there* received and had in his possession, care and custody the said $714.69, moneys belonging to said Miners' Lodge, and being so entrusted with it did *then and there* un-

lawfully and fraudulently embezzle, make way with and convert the same,'' etc. No more definite and specific charge of the place where he received and embezzled it, and the time of doing it, could be required. It is specific and definite, and fully apprised defendant of the charge as to time, place and amount and the character in which he was alleged to have received and converted it.

III.    It is next said no demand was made upon defendant. There was a demand made on him by the district deputy to know why he had not sent in the lodge's dues to the Grand Lodge, and he falsely stated he had done so, and when notified by the district deputy that he was going to St. Louis to ascertain why the lodge had been suspended, he fled the country and no further demand could be made upon him. No demand was necessary under the circumstances. Refusal to account for money on demand may be evidence of embezzlement, but demand is not essential, where as in this case there has been an actual conversion of the funds and flight by the official or trustee to whom such moneys have been confided. [1 McLain's Crim. Law, sec. 638; Com. v. Hussey, 111 Mass. 432; State v. New, 22 Minn. 76.]

IV.    We have already answered the fourth proposition. Miners' Lodge No. 60, A.. O. U. W., was and is a benevolent organization whose funds can be embezzled by one of its members or officials receiving them by virtue of a trust imposed in them. This is well settled in many jurisdictions, even in the absence of a statute as broad and salutary as ours.

V.    It is next insisted that there was no legal evidence showing the laws, rules and regulations of the A. O. U. W. and of Miners' Lodge No. 60.

As to this various officers and members of the lodge testified fully and explicitly to the rules of the order

governing the payment and collection of dues and beneficiary assessments. In addition to this the printed constitution of the A. O. U. W. and its subordinate lodges in force in 1896 was offered in evidence. It was objected to on the ground that it was not certified as required by our statutes, nor was it shown to be a true copy by one who had compared it with the original. But it was shown by preliminary inquiry that this book was sent out by the Grand Lodge to all its subordinate lodges, and it contained certificates that it was the constitution and laws, revised and amended up to and including 1896. It was further shown that it was the only law governing the subordinate lodges at that time and that they accepted it and were governed by it. Moreover, it was shown by the members themselves that they were governed by it.

Thereupon the court permitted counsel for the State to read certain laws therein providing for deputies to supervise subordinate lodges. After having testified as to the amount of dues received by defendant, a question was asked whether any demand had been made on defendant by his successor and that was objected to by defendant on the ground that he was not the proper party. Thereupon the witness was asked, "Does this book marked exhibit 'A' here contain all the rules and regulations governing the subordinate lodges in force at that time?" The witness answered: "Yes, sir." "Do subordinate lodges make any rules and regulations in addition to that?" Ans. "Not in conflict with that; all the rules are printed in this book and whenever they make an amendment it is printed in that."

No objection was made or exception saved to these questions and answers at that time.

Witness further testified, "Mr. Knowles, the defendant, was acting as receiver of Miners' Lodge No. 60 during the year 1896; that he as deputy made de-

mand on Knowles for his report, and defendant told him he had sent the money to the grand recorder.''

Later on the prosecuting attorney offered in evidence law 167 in the book of laws, which was objected to on the ground that the book only purports to be a copy. Which objection the court overruled and defendant excepted.

The said law 167 is in these words: ''The receiver shall receive from the financier all moneys received from the lodge, giving his receipt therefor; pay all orders drawn on him by the master workman attested by the recorder. He shall keep a regular and correct account of all moneys received and paid by him. He shall keep a separate and distinct account of the beneficiary fund and shall immediately upon the receipt of notice through the lodge from the grand recorder forward a draft payable to the order of the grand recorder or otherwise as the lodge may determine, for the amount of the beneficiary fund. A receipt from the grand recorder for the fund so forwarded and excess required on each assessment shall be his voucher to the lodge.''

After the book was admitted, the defendant called Dr. Yeager as a witness and while he was on the stand in answer to a question by the judge of the court, he stated that ''exhibit 'A' was the only laws they had governing the order, the by-laws sent out by the Grand Lodge governing subordinate lodges.'' The witness was a member of the order in another lodge and has been master workman.

By section 2634, Revised Statutes 1899, it is provided that, ''If on the trial or other proceeding in a *criminal cause, the existence, constitution or powers* of any banking company *or corporation* shall become material, or be in any way drawn in question, it shall not be necessary to produce a certified copy of the charter or act of incorporation, but the same may be proved by general reputation, or by the printed book of the

State, government or country by which such corpora-
tion was created." [State v. Jackson, 90 Mo. 156;
State v. Cheek, 63 Mo. 364.]

It was competent then to show, as was abundantly
done in this case, by parol evidence that the Ancient
Order of United Workmen was a corporation and the
relation it bore to its subordinate lodges, independently
of the said book of laws. The witnesses who testified
to these facts were all members of the corporation, and
knew the duties of the receiver, financier, and other
officers, and nothing in the book offered in evidence
added to or in any way materially contradicted their
evidence as to such duties. They testified to the fiduc-
iary relation which defendant bore to said Lodge No.
60 as its receiver.

So that even if the said laws were not certified as
required by statute, and no witness had examined the
original and compared it with the accepted copy, which
they all agreed contained all the laws and regulations
governing the corporation and the lodge, it is plain
that no harmful error to the prejudice of defendant
was committed by receiving the book in evidence.

Moreover, the facts in evidence clearly established
that defendant was elected receiver of Lodge No. 60 and
qualified as such and was acting in that capacity and by
virtue of such position received the moneys he is
charged to have embezzled.

In Reed v. State, 15 Ohio 217, it was held that the
corporate existence of a bank whose paper is alleged to
have been counterfeited may be proved by any one who
of his own knowledge is acquainted with the fact or
by any one who has seen or handled its notes passing
in the community as the notes of such institution or by
general reputation. In Calkins v. State, 18 Ohio St.
366, after reaffirming Reed v. State, supra, the court
said: "And where a person accepts employment from
an association, claiming and assuming to have a cor-
porate existence, as its clerk, and then, by means of

the facilities which his employment and the confidence reposed in him afford, embezzles its property, it is difficult to perceive any principle of justice, public or private, which would be subserved by requiring of the State stricter proof of the corporate existence of the employer of the clerk, or of the owner of the property embezzled, than was given in this case.''

In Kossakowski v. People, 177 Ill. l. c. 567, the Supreme Court of Illinois, after quoting the above extract with approval, very aptly adds: ''The plaintiff in error dealt with it in its *de facto* capacity, *and, as its agent,* came into possession of the money orders of the company. It would be a reproach to our criminal jurisprudence to permit him to embezzle said orders, or the proceeds of their sale, and escape punishment therefor upon the ground the company had not the full legal corporate authority to transact business in the capacity in which it was acting and in which he represented it as agent.''

All of which applies to the facts now under consideration. When this book of laws was admitted, the State had already offered evidence that defendant was a member of Lodge No. 60 A. O. U. W.; that at a regular annual meeting in June, 1896, he was regularly elected receiver of said lodge; that he accepted the trust and by virtue thereof received the moneys he was charged to have embezzled; that he again and again admitted and confessed his shortage; that the dues received from his associate members, other than the beneficiary assessments, belonged absolutely to the Lodge No. 60, and that it was his duty to transmit the beneficiary dues to the Grand Lodge each month; that for his failure to so do the lodge had been suspended, and that he had stated that he had sent the moneys to the grand recorder, which statement he afterwards admitted was untrue. All these facts appearing, in addition to the evidence that the Ancient Order of United Workmen was in fact a benevolent corporation and this

Miner's Lodge a subordinate lodge of it, the defend-
ant's relation as trustee to the funds in his hands as
receiver was established.   The witnesses against de-
fendant were all, like himself, members of the Miners'
Lodge No. 60, and of the Ancient Order of the United
Workmen, and were all alike presumed to know the
laws and by-laws governing the society.   This is uni-
versally held by our courts.   [Bauer v. Sampson Lodge,
102 Ind. 262; Bacon on Benefit Societies and Life Ins.,
secs. 79 and 81, and authorities cited to section 81; Ins.
Co. v. Perrine, 7 Watts & S. 348.]

But defendant offered Dr. Yeager as a witness,
and he, like all the other witnesses, identified the book
offered and admitted as *the only laws* of the lodge. The
lodge having accepted this book as its law and by-laws,
and the defendant being a member thereof and hav-
ing mutually made it their rule of government, we think
in the circumstances of the case, the book was admis-
sible without further proof of its comparison with the
original draft. The lodge and all of its members, by
so accepting it and making it their laws and conforming
to its regulations, were estopped from questioning its
authority, and especially defendant who accepted his
office as receiver under and by virtue of its authority.

VI.   Instruction numbered 4 given on behalf of the
State is challenged as a comment on the evidence.   If
open to this objection no citation of the numerous decis-
ions of this court condemning such a practice is neces-
sary.

The instruction is in these words:

"If the jury find from the evidence in this cause
that the Ancient Order of United Workmen was, in the
year 1896, an incorporated benevolent organization and
that Miners' Lodge No. 60 was a branch or subordinate
lodge of said organization and a part thereof, and that
under the laws, rules and regulations of the Ancient
Order of United Workmen, the assessments constitut-

ing the beneficiary fund were paid by the members of said Miners' Lodge No. 60 to the financier of said lodge and by him delivered to the receiver of said lodge and that it was the duty of the receiver to send the same to an officer of said Ancient Order of the United Workmen at St. Louis under the order and direction and authority of said Miners' Lodge No. 60, and that the said Ancient Order of United Workmen held the Miners' Lodge No. 60 responsible for said funds until so forwarded and received, and had the right and power to suspend the said Miners' Lodge No. 60 on the failure of said Miners' Lodge No. 60 and its receiver to forward the same to the officer of said Ancient Order of United Workmen at St. Louis and to continue such suspension of said Lodge No. 60 until said lodge or its receiver should so forward said money to such officer at St. Louis, then the jury would be justified in finding the money so paid by the members of Miners' Lodge No. 60 so in the custody of its receiver and so held by him until forwarded to St. Louis as aforesaid, was the money of said Miners' Lodge No. 60.''

We think the criticism of this instruction is not justified. A reading of the indictment will show that it was charged that the moneys and dues embezzled were the property of Miners' Lodge No. 60. Indeed, around this point this legal battle was waged in the circuit court and is renewed in this court. One of the vital questions was, to whom did the $714.69 belong?

There was evidence pro and con, the State asserting it belonged to the Miners' Lodge No. 60, the defendant, that it belonged to the Grand Lodge.

For the State to succeed it was essential to show it belonged to the subordinate lodge, and the circuit court pointed out, as it was its duty to do, the facts which must be found by the jury before they could so find. The court properly left each essential fact to be found by the jury and then told them if they found all of said facts, then they would be justified in finding the

money embezzled was the money of the Miners' Lodge. The instruction was based upon the evidence and the jury was left free to find each and every fact. The existence of no fact was assumed to be established.

Where the law fixes the weight or effect of evidence, there is no impropriety in the court declaring it to the jury.

Thus the delivery of a deed is an absolute essential to constitute it a valid conveyance, but whether a deed has been delivered is a mixed question of law and fact, and it is no invasion of the province of the jury for the trial court to tell the jury what acts if established will justify them in finding that a deed has been delivered, and it may without doubt direct them if sufficient facts have not been established that there has been no delivery. [Huey v. Huey, 65 Mo. 689; Turner v. Carpenter, 83 Mo. 333; White v. Pollock, 117 Mo. 467; Jackson v. Phipps, 12 Johns. 418.]

So, "what constitutes ownership of or title to property as an abstract proposition is a question of law for the court, but in a particular case where the evidence is conflicting, whether the property is real or personal, and whether the question arises in a civil action or criminal prosecution, the question is one of mixed law and fact, i. e., one for the determination of the jury guided by the court's instructions." [23 Am. and Eng. Ency. Law (2 Ed.), p. 578.]

The instruction in no manner commented on the evidence. It simply advised the jury what facts if established by the evidence would justify them in finding that Miners' Lodge No. 60 was the owner of the money alleged to have been embezzled.

VII. Instruction numbered 2 given for the State is likewise challenged.

It is insisted first that it was error to submit to the jury whether the alleged funds were owned by Miners' Lodge No. 60, as this would be to permit a part

of a corporation to own property when the corporation exists as a legal unity.

It was entirely competent for the Ancient Order of United Workmen ·to distribute its membership in separate lodges and permit each lodge to carry on its work in its own locality, and to exact from it only such dues as might be necessary to maintain the Grand Lodge, and to require it to transmit the beneficiary as-sessments which should constitute the fund for the pay-ment of death losses to the grand recorder. It was the uncontradicted evidence of all the witnesses that all other funds save the beneficiary assessments belonged to the local lodges.

No principle of law or of public policy was or is violated by so doing, and defendant being a member of the local lodge is in no position to deny that right.

The course of business and the relation of the local lodge to the Grand Lodge was all in evidence, and there was ample evidence tending to show that the Grand Lodge looked to the subordinate lodges to require their members to pay their dues and assessments to an officer of the local lodge known as a financier, and his duty in turn to deliver these funds to the receiver of the local lodge, who was the treasurer of the local lodge and bore the relation of a trustee to the local lodge and was accountable to it for an honest disbursement of the same under its direction.

We have no hesitancy in holding that, in the cir-cumstances, the local lodge had such a property right even in the beneficiary funds until they had been trans-mitted to the grand recorder as made it proper to lay the ownership in the local lodge as against one of its own officers who should embezzle it.

Nor is this instruction open to the objection that it assumes as a fact that in the month of December, 1899, defendant was arrested in Indiana and brought back to Missouri. A fair, even critical, reading of the instruction will show that it was left to the jury to find

that the defendant was arrested in Indiana and brought back to Missouri, and the objection that there was no evidence that Miners' Lodge No. 60 was a benevolent organization, and that its objects and purposes were to render aid to the families of its members in cases of sickness and death, is contradicted by the evidence in the case.

VIII.   Instruction numbered 5 is assailed for the reasons that:

"First.   It requires no consideration of the other facts and circumstances in evidence, in connection with the evidence of the alleged flight.   The jury were permitted and instructed by it that they could base a verdict of guilt against the defendant upon the evidence of flight or of concealment alone.

"Second.   Under that direction no *corpus delicti* need be proven.   Mere flight, by reason of the charge, no matter whether any offense had been committed or not, was and is thereby made a sufficient basis upon which to rest a verdict and judgment of guilt."

This instruction is as follows:   "Flight raises a presumption of guilt, and if the jury believe and find from the evidence that the defendant, after the alleged commission of the embezzlement charged in the indictment, fled from the State of Missouri, for the purpose of avoiding arrest and trial for said offense, you may take this fact into consideration in determining his guilt or innocence."

All that this instruction tells the jury is that flight raises a presumption of guilt, and if they find that after the alleged embezzlement charged in the indictment, the defendant fled from this State to avoid arrest and trial, they may take this fact into consideration in determining his guilt or innocence.

It is not obnoxious to the criticism that it anywhere dispenses with proof of the *corpus delicti*.   The jury were only advised they could consider flight in making

up their verdict, not base a verdict upon that alone. The instruction was to·be read with the other instructions. While it did not use the additional words "with other facts and circumstances in evidence," such was its obvious meaning when read with the other instructions.

This instruction was given in State v. Potter, 108 Mo. l. c. 429 and 430, and was approved. In that case there was an explanation given of the flight; in this, there was none whatever. [State v. King, 78 Mo. 557; State v. Ma Foo, 110 Mo. 14; State v. Griffin, 87 Mo. 613; State v. Williams, 54 Mo. 170.]

IX. Error is assigned in the giving of the seventh instruction which is in these words:

"The court instructs the jury that if you believe from the evidence that the defendant made any statements in relation to the crime charged against him, the jury must consider such statements all together. The defendant is entitled to the benefit of what he said for himself, if true, and the State is entitled to the benefit of anything he said against himself in any statements proven by the State. What the defendant said against himself the law presumes to be true, because said against himself; what the defendant said for himself, the jury are not bound to believe, because it was said in statements proved by the State, but the jury may believe it or disbelieve it as it is shown to be true or false by the evidence in this cause. It is for the jury to consider under all the facts and circumstances how much of the whole statements the jury deem worthy of belief."

This instruction has been so often challenged and as often approved that we must decline to again discuss it. Learned counsel for defendant concede this, but contend that it should not have been given in this case because there was no evidence to establish the *corpus delicti*, save the admissions of the defendant,

and that extrajudicial confessions are not sufficient to warrant a conviction.

Full proof of the *corpus delicti*, independent of the confessions of defendant, is not required.

It is sufficient that there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of defendant's guilt. [State v. Patterson, 73 Mo. 695; State v. Walker, 98 Mo. 95.]

Without repeating it, we think there was much evidence tending to establish the embezzlement of the money and this evidence together with the oft-repeated confessions of defendant without any threats or promise of immunity afforded ample basis for the verdict of guilty.

X. Complaint is made in the brief of defendant that the circuit court made improper remarks prejudicial to defendant. The matters of which counsel complain are largely questions asked by the court for its own information. The right of the judge to inquire of a witness, in order to advise himself of the facts and to enable him to correctly instruct the jury and to gather the trend of the trial, is no longer open to doubt in this court. We have read all the questions and we discover no reversible error in them. Moreover, the alleged impropriety of the court is not made a ground of the motion for new trial. The nearest allusion to it is the eighth ground, to-wit, "Because the court committed error at the trial of the cause in that the court did not give and accord to the defendant a fair and impartial trial."

This generalization is entirely too broad to make it the basis of an exception to the language of the judge in ruling upon and excluding evidence.

We can perceive no distinction in principle between an exception to improper remarks of counsel and those of the judge. If deemed prejudicial they should be

called to the attention of the court, at the time, and specifically, and not in the vague terms of this ground of the motion for new trial.

As to the remarks of the prosecuting attorney in his concluding argument, it is not made a ground of new trial and is not before us for review. This is too well-settled law in this State to require any citation of authority.

We have thus endeavored to consider every ground of error assigned for the reversal of this judgment.

In our opinion none of them, or all of them, would justify the reversal of the judgment.    The evidence tends very conclusively to establish the embezzlement by the defendant of the lodge's moneys which he had obtained and had in his possession by reason of his official position as receiver or treasurer of the lodge.

The case made is a very flagrant abuse of his official trust, and the evidence of the embezzlement overwhelming.

The judgment must be and is affirmed.

All concur, except *Burgess, J.*, absent.