# THE STATE v. CLARENCE O. SKINNER,

## Appellant.

### Division Two, March 17, 1908.

1. **EMBEZZLEMENT: Information: Conversion: Owner's Consent.** It is not essential, under Sec. 1918, R. S. 1899, that the information charging embezzlement should contain an allegation that the money was converted by defendant without the consent of the owners.

2. **———: ———: Funds of Labor Union: Name of Members not Alleged.** It is not necessary that the information, charging defendant as treasurer with the embezzlement of the funds of an unincorporated labor union, set out the names of the various parties composing the organization or partnership. Sec. 1918, R. S. 1899, is broad enough to embrace embezzlement by an officer of any trade organization or benevolent association, incorporated or unincorporated.

3. **———: Unlawful Organization: In Restraint of Trade.** A bill posters' and billers' union is not an unlawful organization in restraint of trade, but like other unions, one for the promotion of the welfare of its members. But, even if it were unlawful, a defendant who as its treasurer embezzles its funds received by him as such, is not permitted to make that defense.

4. **———: Sufficiency of Evidence.** The testimony introduced by the State shows the existence of a trade organization; that defendant was its acting treasurer; that as such he received funds belonging to it; that when arrested he was told by the officer that the union accused him of taking about $700 of its funds; that he replied to this, "I don't care what they say I took; it was about $600;" that he stated at a meeting of the union that he had in the treasury between six and seven hundred dollars; that a day or two later he by letter informed one of the members that his books and vouchers would be found on his desk in the office of the union; that the next seen of him was four months later when he was arrested; that when asked after his arrest what he did with the money, he said, "Used it at various times for various purposes." *Held*, sufficient to support a verdict of guilty of embezzlement.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*Hans Wulff* and *Henry M. Walsh* for appellant.

(1) The information did not fully inform the defendant of the character of the offense with which he was charged; by failing to set out the names of the various parties constituting the association or partnership and thus failed to inform the defendant who his accusers were. State v. McChesney, 90 Mo. 120; State v. Beaucleigh, 92 Mo. 490; State v. Stowe, 132 Mo. 199. (2) There was no evidence to show the amount of money which had been paid to the association and to which it could legitimately and legally claim title. (3) If this association under the statute could not maintain a suit for the recovery of the money which it is alleged was in the hands of the defendant, it would not be possible to prosecute defendant for the embezzlement of the money to which they could not sustain a legal title. Bishop v. American Brewers Company, 157 Ill. 284. (4) A prosecution will not lie for an embezzlement of funds from an association which has an illegal purpose, although a prosecution could lie for a larceny, the difference being that a larceny carries with it a trespass and violence, while the embezzlement is predicated upon a wrongful conversion of funds acquired rightfully from a legal owner for a lawful purpose, the statute making the difference. (5) There was no evidence to show that defendant had ever an accounting or that any demand had been made on him for the funds; on the contrary, the only evidence along this line was to the effect that at the time of his arrest he was actually going to meet his associates, no evidence of any character being introduced to show that there was even any suspicion as to defendant's honesty

until he was arrested; therefore, the State failed to show any criminal intent on the part of the defendant. State v. Jennings, 98 Mo. 495. (6) The information failed to charge that the money was converted without the consent of the owners by the defendant to his own use with the intent to deprive the owner of the use of the said money permanently. State v. Pollock, 105 Mo. App. 273. (7) Mere conversion of funds is not embezzlement, but the State must show intent to convert to own use. Home Lumber Co. v. Hartman, 45 Mo. App. 647.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The information, which was accompanied by the affidavit of the assistant circuit attorney, is sufficient in form and substance. Kelley's Crim. Law, sec. 680. (2) The evidence for the State was properly admitted, as it tended directly to show that the defendant received the money into his hands, which belonged to the union; that he received it as treasurer of said union, and that he failed to account for and pay it over to his successor, as requested. The admissions made by the defendant, and his conduct, clearly showed that he is guilty, and all of said evidence was properly admitted. (3) The evidence was sufficient to justify the jury in convicting the defendant of the crime of embezzlement. If the State's witnesses testified correctly, and of this the jury have so found, then he was properly convicted. There being substantial evidence of the guilt of the defendant, and the verdict of the jury having been approved by the trial court, this court will defer thereto, and not attempt to pass on the weight of the testimony. State v. Smith, 190 Mo. 706; State v. Groves, 194 Mo. 452; State v. Payne, 194 Mo. 442; State v. Swisher, 186 Mo. 8.

FOX, P. J.—This cause is brought to this court by appeal on the part of the defendant from a judgment of the circuit court of the city of St. Louis, convicting him of the offense of embezzlement. The conviction and judgment in this case are predicated upon an information filed by the assistant circuit attorney on the 18th day of December, 1905, which was duly verified. Omitting formal parts, it was as follows:

"Richard M. Johnson, Assistant Circuit Attorney, in and for the city of St. Louis aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows:

"That Clarence O. Skinner on or about the fourteenth day of March, in the year of our Lord, one thousand nine hundred and five, at the city of St. Louis aforesaid, was a member of the Bill Posters' and Billers' Union, Local Number Five of the city of St. Louis and State of Missouri, and the said Clarence O. Skinner, being then and there an officer of said Bill Posters' and Billers' Union, Local No. Five, to-wit, treasurer, duly appointed, elected and qualified under the laws, rules and regulations of said Bill Posters' and Billers' Union, Local No. Five, and that by virtue of his said membership, office and official position in said Bill Posters' and Billers' Union, Local No. Five, did then and there receive and have in his custody and possession, care and control, the moneys of the said Bill Posters' and Billers' Union, Local No. Five, to a large amount, to-wit, six hundred and sixty dollars, lawful money of the United States, and was by virtue of his said membership, office and official position in said Bill Posters' and Billers' Union, Local No. Five, trusted with the safe keeping and disbursement of said moneys belonging to and being the property of the said Bill Posters' and Billers' Union, Local No. Five, according to the laws, rules and regulations

of the said Bill Posters' and Billers' Union, Local No. Five, and being so entrusted with and having the care, custody and control as aforesaid of said moneys, to-wit, the said sum of six hundred and sixty dollars, of the value of six hundred and sixty dollars, all the moneys and property of and belonging to the said Bill Posters' and Billers' Union, Local No. Five, by him, the said Clarence O. Skinner, received and taken into his possession, care and custody and control by virtue of his said membership, office and official position in said Bill Posters' and Billers' Union, Local No. Five, as aforesaid, for safe keeping and disbursement as aforesaid, did then and there unlawfully, feloniously and fraudulently embezzle and make away with and convert to his own use, and the said sum of money in the manner and form aforesaid, feloniously did steal, take and carry away; against the peace and dignity of the State.''

At the April term, 1906, of said court the defendant was put upon his trial. The evidence upon the part of the State tended to prove that the Bill Posters' and Billers' Union was a labor organization, organized some time in 1901; that its object was to promote the welfare of its members; that it was a voluntary association and had a constitution and by-laws; that the officers of the organization consisted of president, vice-president, corresponding and financial secretary and treasurer, also a recording secretary and three trustees. The evidence further tended to prove that the defendant was elected to the office of treasurer of the Bill Posters' and Billers' Union, Local No. 5, in December, 1903, and installed in office about the first of the year 1904; that he was re-elected to the office of treasurer in 1904, and continued to hold such office until the 14th day of March, 1905. The defendant was the successor in office of one H. W. Lake. About the month of February or March, 1904, defendant, as treasurer, re-

ceived from Lake funds of the organization amounting to something less than eight hundred and more than seven hundred dollars; the sum of money transferred by Lake to the defendant consisted of two hundred dollars in cash and a sum of money evidenced by a deposit book. This transfer was made in the presence of one John W. Owen. At a meeting of this organization on the evening of March 13, 1905, defendant stated in answer to inquiry that he had in the treasury between six and seven hundred dollars. At this meeting defendant was authorized to renew his bond as treasurer. A day or two after this meeting defendant by letter informed one of the members of the union that his books and vouchers would be found on his desk in the office of the union. The next seen of the defendant was at the time of his arrest in the latter part of July. The evidence further tended to prove that defendant did not account for the money in his possession, but that he converted it to his own use. When arrested defendant was told by the officers that this union accused him of taking about $700 of its funds, in reply to which he said, "I don't care what they say I took; it was about $600." When asked what he did with the money he replied that he "used it at various times for various things." A number of vouchers were introduced by the State purporting to show that certain sums of money had been paid out by defendant. According to the serial number of such vouchers one, two or perhaps more were missing. The evidence further tended to prove that the account books of the union were not in existence, or that they could not be found at the time of the trial. There was no evidence tending to show that the defendant had ever had an accounting with the union or that any demand had been made upon him for the return of the funds. Over the objections of defendant the State introduced in evidence a book kept by the various treasurers of the

union, which contained entries made by defendant during his term of office.

At the close of the State's evidence defendant asked an instruction in the nature of a demurrer, directing the jury to acquit defendant, which was by the court refused. Defendant then offered to prove by witness Dix that the Bill Posters' and Billers' Union, Local No. 5, was an illegal organization and one operating in restraint of trade, and had no legal right to enforce the collection of the alleged sum of money which it was alleged to have placed in the hands of the defendant. This evidence was by the court excluded. At the close of all the evidence defendant renewed his request for an instruction in the nature of a demurrer to the evidence, which was refused by the court.

The cause being submitted upon the evidence and instructions of the court, the jury returned a verdict finding defendant guilty as charged and assessed his punishment at imprisonment in the penitentiary for a term of two years. Defendant in due time and proper form filed his motion for a new trial, which was by the court overruled. Sentence and judgment were entered of record in conformity to the verdict and from this judgment defendant prosecutes this appeal.

## OPINION.

### I.

The first proposition with which we are confronted, as disclosed by the record, is the challenge by appellant to the sufficiency of the information upon which this judgment is predicated. This challenge is based upon two grounds:

1st. That the information failed to charge that the money was converted without the consent of the owners by the defendant to his own use with the in-

tent to deprive the owners of the use of the said money permanently.

2d. It is insisted that the information fails to properly charge the ownership of the money alleged to have been embezzled.

Upon the first proposition it is sufficient to say that the allegation insisted upon by the appellant, that is, that the money was converted without the consent of the owners, etc., is not essential to the validity of an information predicated upon section 1918, Revised Statutes 1899. Indictments substantially in the same form as the information in the case at bar, predicated upon the provisions of the statute defining the offense of embezzlement by an officer, have been approved by this court. [State v. Mahan, 138 Mo. 112; Sherwood's Commentaries on the Criminal Law, 260.]

It is next insisted by learned counsel for appellant that the information is insufficient for the reason that it did not fully inform the defendant of the character of the offense with which he was charged, by failing to set out the names of the various parties constituting the association or partnership, and thus failed to inform the defendant who his accusers were.

The information in this cause charges the defendant, as treasurer of the Bill Posters' and Billers' Union, Local No. 5, of the city of St. Louis and State of Missouri, with embezzlement of funds belonging to such organization received by him as such treasurer. This information is predicated upon the provisions of section 1918, Revised Statutes 1899, which provides, among other things, that "if any officer or member of any benevolent, trade or religious organization, shall convert to his own use, in any manner whatever, or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public moneys, or any moneys that may have come to him or them by virtue of his or their

office or official position, or by virtue of any trust reposed in him or them, . . . shall, upon conviction, be punished in the manner prescribed for stealing property,'' measured by the value of the property so taken or secreted. This section in express terms makes it embezzlement for any officer or member of any trade organization to convert to his own use in any manner whatever the moneys that may have come to him by virtue of his office or official position, or by virtue of any trust reposed in him or which may be in his possession, care or control by virtue of his office or trust.

It is manifest that the offense defined by this section is not restricted to embezzlements by officers or trustees of any incorporated benevolent or trade organization, but is so comprehensive as to embrace an embezzlement by an officer of any trade organization, whether incorporated or not. This identical proposition was in judgment before this court in State v. Knowles, 185 Mo. 141, where it received at the hands of this court a most thorough and careful consideration. Judge GANTT, in speaking for this court, pointed out the settled rules of the common law, that one partner could not be guilty of embezzling the partnership funds, because a man could not be guilty of stealing his own property, or property of which he was the joint owner, and a like ruling had obtained as to members of organizations having an interest in their funds, citing the authorities in support of such common-law rule that ''if it appears that the accused has any interest in the property jointly with another he cannot be convicted of embezzlement in respect to such property.'' It was then pointed out that the purpose of the statute now under consideration was to remedy this evil, and in discussing the statute it was said by this court in that case: ''To remedy this evil was, we think, the purpose of the Legislature in making

the statute broad enough to cover embezzlements by any officer or member of any benevolent organization. The language of the statute is comprehensive enough to cover embezzlements by any officer or member of any benevolent organization, and certainly it is not less reprehensible and criminal in an officer or trustee of an unincorporated benevolent organization to embezzle and convert its funds raised for a charitable and praiseworthy purpose and entrusted to him, than it is to steal and convert the funds of an incorporated society. The statute has not restricted its condemnation to the latter class and we have no disposition to do so, because we think the evil is as great if not greater in the one than the other. It follows that the objection leveled at the indictment because it does not charge the Miners' Lodge No. 60 was an incorporated benevolent organization is not well taken. It is averred that it was then and there a benevolent organization, and this is sufficient for the purpose of charging its own receiver or trustee with the corrupt conversion of its funds entrusted to his keeping and care. The indictment follows the statute and sufficiently individuates the crime, the relation the defendant bore to Miners' Lodge No. 60, and the conversion of the moneys of the lodge received by him by virtue of his official relation to the lodge. The case of State v. Patterson, 159 Mo. 98; State v. Jones, 168 Mo. 398, and State v. Horned, 178 Mo. 59, in no manner conflict with the conclusion we have reached in this case. Those cases are based on violations of a different section (1912) of the Revised Statutes and properly declare the law on the facts upon which they are based.''

The information in the case at bar charges that the defendant was a member of the Bill Posters' and Billers' Union, Local No. 5 of the city of St. Louis and State of Missouri. It further charges that this union was a trade organization in the city of St. Louis afore-

said, and that the defendant was the treasurer of such trade organization and embezzled the funds, as charged in the information. Following the case of State v. Knowles, supra, we are of the opinion that the charge in the information, which was in pursuance of the provisions of the statute, that the defendant as treasurer of the trade organization embezzled certain funds, was a sufficient compliance with the requirements of the law as to averments of the ownership of the property embezzled, and in contemplation of law the members of the trade organization were not partners, and it was not essential in framing this charge to treat them as such.

## II.

An examination of the motion for new trial shows that there is no complaint directed toward the instructions given by the court in this cause, nor is there any error assigned that the court failed to fully instruct the jury upon all questions of law arising in the case which were necessary for the jury in reaching their verdict; therefore we take it that the instructions or the failure to give instructions is not before us for review.

## III.

It is earnestly insisted by counsel for appellant that the Bill Posters' and Billers' Union, Local No. 5, of the city of St. Louis and State of Missouri, was organized for an unlawful purpose and therefore a prosecution for embezzlement of its funds could not be maintained.

To this insistence we are unwilling to give our assent. It is but common knowledge that organizations of this character are in existence all over this State and that the objects and purposes of the organizations

are to promote the welfare of the members of such organizations. It may also be added that the defendant in this cause is in no position to make the defense that this was an unlawful organization. He was a member of it and was the treasurer of the organization, received its funds and he should not be permitted to say now that it was an unlawful organization organized for unlawful purposes and for that reason he was authorized, if he saw proper, to convert the funds of such organization to his own use. We are of the opinion that there is no merit in this contention.

## IV.

This brings us to the consideration of the only remaining proposition disclosed by the record, that is, was the testimony sufficient to support the verdict returned by the jury?

We have indicated the nature and character of the testimony in the statement of this cause and we see no escape from the conclusion that the testimony developed at the trial furnished ample support for the conclusions reached by the jury. The testimony introduced by the State shows the existence of the trade organization and that the defendant was the acting treasurer of it; that he received funds as treasurer, belonging to such organization, there is no dispute. When this defendant was arrested he was told by the officer that this union accused him of taking about $700 of its funds. In replying to this he said: "I don't care what they say I took; it was about $600." He was then asked what he did with the money and he replied that he "used it at various times, for various things." These admissions stand undenied and uncontradicted. The defendant did not testify; hence we see no room for the contention that there was not sufficient evidence to show that the defendant converted this money to his own use. The witnesses testifying

in this cause were before the court and jury. It was the exclusive province of the jury to weigh their testimony. There were opportunities in the trial court to judge of the credibility of the witnesses that are not afforded the appellate court. Upon the testimony as disclosed by the record the jury returned a verdict finding the defendant guilty. This verdict therefore stands approved, not only by the jury, but as well by the judge of the court presiding at the trial.

It may not be out of place to say that while the instructions are not before us for review, yet in the investigation of this cause such instructions being embraced in the record, we have examined them and find that they fully and fairly present the law applicable to the facts developed at the trial.

Finding no reversible error, the judgment of the trial court should be affirmed, and it is so ordered.

*Gantt* and *Burgess, JJ.*, concur.