[1] Defendant Roy Ward was convicted in City Court No. 1 of the City of St. Louis, Missouri, on a charge of violating an ordinance of said city. The information containing the charge alleged that Roy Ward on the third day of September, 1947, at 237 South Jefferson Street in said city and state "did then and there make, establish and aid or assist in making and establishing a lottery, gift and enterprise and scheme of drawing in the nature of a lottery. (Policy)."
[2] Upon a trial in said City Court defendant was found guilty as charged and his punishment assessed at a fine of $50.00 and costs. Defendant appealed to the St. Louis Court of Criminal Correction where a trial before the court resulted in a judgment exactly similar to the judgment rendered in the City Court. From the judgment of the Court of Criminal Correction defendant appealed to this court. *Page 848 
[3] Prior to the commencement of the trial in the Court of Criminal Correction defendant filed a motion to suppress evidence. He alleged in said motion that police officers of the City of St. Louis had in their possession certain evidence in the nature of alleged top sheets, take sheets, policy result ballots, policy note books and other paraphernalia which was intended to be used against defendant in the trial. Defendant also alleged in said motion that said evidence was obtained by a search and seizure before defendant's arrest; that at the time of such search and seizure said officers had no warrant for the arrest of defendant and that said search and seizure were unreasonable, illegal and violative of Sections 15 and 19 of Article I of the Constitution of the State of Missouri, Mo.R. S.A., and that to permit the use of said evidence against defendant at the trial would be compelling the defendant to give testimony against himself.
[4] Testimony on defendant's motion to suppress evidence was heard before the court at which hearing Robert Griffin, a police officer who was a member of the Secret Service Gambling Division of the Police Department of the City of St. Louis, testified that on the day in question he went to the building in which one Morris Washington claimed to live. The witness stated that there were a lot of tenants in the same building and that the part of the building into which he went was not Washington's home. The building was located at 237 South Jefferson Avenue in St. Louis. The witness stated that he and his associate officer had seen the same persons going in and out of the building at twelve Noon, five P.M. and nine P.M., and that they had had the place under surveillance for about a week; that they had no search warrant; that he and his partner entered the front door of the building which was a common entry for the tenants and together they entered a hall about 25 feet long; that there was a door standing open and they could hear voices of persons coming from the basement; that they descended the stairs to the basement, about 15 steps, and as they stopped on the stairs, they looked into the basement and saw a group of individuals seated on benches and others on chairs and that they had policy papers; that he was then only a few feet away and looked in the basement; that one Morris Washington was seated at a table and on the table before him were policy papers and policy books from policy drawings. The witness described a number of other individuals who were in the basement at the time and related what each of them was doing, and described the search that was made of some of the individuals and what was found on them. The officer also related statements made by said other individuals because the court was at that time also hearing, without any objection from anyone, the motions of other defendants to suppress evidence exactly similar to the motion filed by defendant in this case and relating to the same evidence which was sought to be suppressed.
[5] Two of the other individuals, who were in the basement room at the time mentioned and who were arrested along with defendant in the instant case and whose appeals from convictions were argued along with this appeal in this court, were Morris Washington and Joe Simon, each of whom had been charged in separate informations filed in the same court with violation of the same city ordinance on the same day and at the same time and place as was charged in the information filed in this case against this defendant Roy Ward.
[6] Officer Griffin further testified that on the table where Morris Washington was seated there was a take book containing original sheets and two carbon copies, then there was the play 2099 and number 5, and the records from ten policy books, amounting to $28.90, and twelve policy original top sheets; that Joe Simon was seated on a bench at the south wall and that Detective Geile seized from Simon's hands one policy writer's note book containing an original top sheet and two carbon copies and Books 1818 and 2019; that the defendant, Roy Ward, was seated on the same bench with Joe Simon and that he seized from Ward one policy writer's note book marked on the book 79 and 2099. At another point in his testimony the officer stated that defendant, *Page 849 
Roy Ward, was sitting in a chair just inside of the door at the foot of the basement steps near the tables; that they arrested Ward and they found in his possession one policy writer's book containing carbon copies of policy top sheets No. 56 Class 2099.
[7] Officer Griffin further testified that when he entered the building through the common entry at the time in question he had an idea whom he would run into. The court overruled defendant Ward's motion to suppress evidence and then heard the case on its merits.
[8] Officer Griffin continuing with his testimony stated that they found on defendant Ward three policy bet pads. These were marked City's Exhibit 3. With respect to these pads the witness testified that they were: "a recording of policy bets that Roy Ward had, where in a policy book — he takes the bet pad and sets forth the numbers that have been selected, the way they are placed, and the amount of money that is bet, given a class number of the drawing on which they are bet."
[9] The officer further testified:
[10] "Q. Now, did you question Ward? A. Yes, sir.
[11] "Q. What statement did he make?"
[12] At this point counsel for defendant objected on the ground that to permit the witness to answer would be a violation of defendant's constitutional rights against search and seizure because his arrest was unlawful.
[13] The court overruled the objection and the witness answered: "A. Roy Ward stated he had been writing policy book No. 56 for the past three weeks for the Royal Policy Company, and that he earns a commission of thirty cents on every dollar's worth of policy which he wrote, and that he had been unemployed for the past two years, and stated that he wrote policy in the book for today for the twelve o'clock noon drawing, and that he was turning in this top sheet to Morris Washington shortly before we entered."
[14] The City introduced in evidence as exhibits the various papers and books which the officers had identified as having been seized in the room where the arrests were made, as well as the papers and articles taken from the defendant, all pertaining to the game of policy.
[15] Defendant contends that the court erred in refusing to sustain his motion to suppress the evidence and argues that the evidence in support of his motion proved that the search of the defendant and the seizure of the evidence were unreasonable and violative of defendant's constitutional rights and that the officer, therefore, had no right to search him or to seize evidence which he had in his possession at that time. We are unable to agree with defendant's views on this point.
[16] At first glance defendant's contention may appear to raise a constitutional question of which our Supreme Court under Article V Section 3 of the Constitution of Missouri would have exclusive jurisdiction on appeal. Said Section of the Missouri Constitution provides: "The supreme court shall have exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the United States or of this state * * *." However, our Supreme Court has held that the right of arrest by police officers in the City of St. Louis under Section 7691, R.S.Mo. 1939, Mo.R.S.A. § 7691, is lawful when the police officers have reasonable grounds to believe that an offense against the law has been committed by the person arrested. State v. Humphrey, Mo.Sup., 217 S.W.2d 551, 553. To the same effect are Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68; Wehmeyer v. Mulvihill, 150 Mo.App. 197, 130 S.W. 681; Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732. See also City of St. Louis v. Gavin, Mo.App., 222 S.W.2d 536, and City of St. Louis v. Gavin, Mo.App., 222 S.W.2d 531, in both of which cases opinions were handed down by this court on June 21, 1949. Furthermore, it has been held by our Supreme Court that where the arresting officer has reasonable grounds to believe the person arrested has committed an offense against the law, the officer may take from him articles of value as evidence. State v. Raines, *Page 850 
339 Mo. 884, 98 S.W.2d 580; State v. Williams, 328 Mo. 627, 14 S.W.2d 434; State v. Humphrey, Mo.Sup., 217 S.W.2d 551.
[17] It has also been held in numerous cases by our Supreme Court that when that court has once determined the precise constitutional question raised in a case wherein the courts of appeals would otherwise, absent such constitutional question, have jurisdiction, the Supreme Court will not thereafter assume jurisdiction of the cause on account of the constitutional question mooted. Dickey v. Holmes, 208 Mo. 664, 106 S.W. 511; Turner v. Tyler Land Timber Co., 259 Mo. 15, 167 S.W. 973, 975; State v. Finley, 259 Mo. 414, 168 S.W. 921; State v. Swift Co., 270 Mo. 694, 195 S.W. 996.
[18] On the record now before us and under the decisions of our Supreme Court, supra, we hold that no constitutional question is involved and that this court has jurisdiction of the appeal.
[19] We are of the opinion that under the evidence shown herein the police officers had not only reasonable grounds but had clear, strong grounds for believing that defendant was engaged in violation of the law at the very time of his arrest. Officer Griffin's familiarity with the game of policy and his knowledge that it is not conducted by one person alone but by several persons, each of whom is a necessary link in the chain used to carry on the game, made it obvious to him, from what he actually saw immediately upon his entrance into the room, that defendant was then and there aiding and assisting in conducting the game of policy. The lawmakers undoubtedly, knowing that no one person alone establishes or conducts the game, made it an offense for anyone to "make or establish or aid or assist in making orestablishing any lottery, gift or enterprise, or scheme of drawing in the nature of a lottery." (Emphasis ours.) Ordinance of the City of St. Louis No. 41386, Section 1677. See State v. Wilkerson, 170 Mo. 184, 70 S.W. 478.
[20] The police officers not only had reasonable grounds to arrest defendant and his associates but in our opinion would have been derelict in their duty had they not done so under the circumstances shown in the evidence. The defendant and his associates were actually "caught in the act" of violating the law. The police officers, being familiar with the surreptitious manner in which the game of policy is carried on, saw overwhelming evidence before their eyes of the fact that defendant was at the very moment of his arrest aiding and assisting in carrying on the game of policy. It is unnecessary to repeat that evidence here. The arrest of the defendant without a warrant was, therefore, a lawful one, and under the decisions of our Supreme Court, supra, it follows that the search of defendant's person and the seizure of the evidence mentioned also were lawful.
[21] The numerous cases cited by defendant on this point have no application to the situation before us. We hold that the court did not err in overruling defendant's motion to suppress the evidence.
[22] Defendant makes the point that the court erred in admitting into evidence the testimony of Officer Griffin as to certain admissions made by defendant at the time of his arrest for the reason that the corpus delicti had not been established. From defendant's argument on this point we are satisfied that he is in error as to what constitutes the corpus delicti (body of the crime) in this kind of a case. The testimony of Officer Griffin showing what defendant and his associates were doing when the officers entered the basement room, together with his testimony as to the various kinds of policy books and papers which each of the men, including defendant Ward, was handling showed plainly that defendant was aiding and assisting in carrying on the game of policy at that time.
[23] In the case of State v. Skibiski, 245 Mo. 459, 463, 150 S.W. 1038, 1039, our Supreme Court said: "The rule in this state has long been that full proof of the corpus delicti, independently of the confession, is not required. If there is evidence of corroborating circumstances which tend to prove the corpus delicti and *Page 851 
correspond with circumstances related in the confession, both the circumstances and the confession may beconsidered in determining whether the corpus delicti is sufficiently proved in a given case." (Emphasis ours.) The rule in the Skibiski case, supra, applies with equal force to statements made by a defendant as well as to confession. See State v. Mullinix, 301 Mo. 385, 257 S.W. 121; State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523; State v. Kauffman, 329 Mo. 813,46 S.W.2d 843; State v. Knowles, 185 Mo. 141, 83 S.W. 1083. See also State v. Arndt, Mo. Sup., 143 S.W.2d 286, 287, where the Supreme Court quoting from State v. Thompson, 333 Mo. 1069, 64 S.W.2d 277, 282, said: "The rule in this state is that full proof of the corpus delicti independent of the defendant's extra judicial admissions is not required. On the contrary, what seemed to be only slight corroborating facts have been held sufficient. State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523. Neither is it essential that all the independent proof of the corpus delicti came first in order of proof. 7 R.C.L. § 6, page 778, 16 C.J. § 1514, p. 737."
[24] The overwhelming evidence of the defendant's participation in aiding and assisting in the conduct of the game of policy which the officer found upon entering the room in the basement mentioned, together with defendant's own statements as to the part he was playing in the game, were amply sufficient to justify the court in admitting the statements objected to by the defendant. We hold that the court did not err in admitting the evidence of the statements in question.
[25] Defendant next contends that the court erred in failing to sustain his motion for the dismissal of the charge at the close of the City's case on the ground that the City had failed to make a case against him. This general complaint against the action of the court is not supported by any authorities in defendant's brief and is completely answered by what we have heretofore said in relation to the overwhelming proof that was shown of defendant's participation in the conduct of the game of policy. We say "overwhelming proof" advisedly for such proof includes defendant's own statements showing his guilt which were properly and lawfully admitted into evidence by the court.
[26] We hold that the evidence was amply sufficient to justify defendant's conviction and there being no error shown in the trial court's procedure, the judgment of the Court of Criminal Correction is affirmed.
[27] ANDERSON, P. J., and HUGHES, J., concur.