[1] Defendant Joe Simon was convicted in City Court No. 1 of the City of St. Louis on a charge of violating an ordinance of said city. An information was filed in said City Court charging that Joe Simon in the City of St. Louis and State of Missouri on the third day of September, 1947, at 237 South Jefferson Street "did then and there make, establish and aid or assist in making and establishing a lottery, gift and enterprise and scheme of drawing in the nature of a lottery. (Policy)."
[2] A trial in the City Court resulted in a finding that defendant was guilty as charged and his punishment was assessed at a fine of $50 and costs. Defendant appealed to the St. Louis Court of Criminal Correction where a trial before the court resulted in a judgment assessing against the defendant a fine of $50 and costs. From the judgment of the Court of Criminal Correction defendant appealed to this court.
[3] Prior to the commencement of the trial in the Court of Criminal Correction defendant filed a motion to suppress evidence. He alleged in said motion that police officers of the City of St. Louis had in their possession certain evidence in the nature of alleged top sheets, take sheets, policy result ballots, policy note books and other paraphernalia which was intended to be used against defendant in the trial. In that motion defendant charged that said evidence was obtained by a search and seizure before defendant's arrest; that at the time of such search and seizure said officers had no warrant for the arrest of defendant and that said search and seizure were unreasonable, illegal and violative of Sections 15 and 19 of Article I of the Constitution of the State of Missouri, Mo.R.S.A., and that to permit the use of said evidence against defendant would be compelling defendant to give testimony against himself.
[4] The court heard testimony on defendant's said motion to suppress evidence, at which hearing Robert Griffin, a police officer, testified that he was a member of the Secret Service Gambling Division of the Police Department of the City of St. Louis; that on the day in question he went to the building at 237 South Jefferson Street in which one Morris Washington claimed to live; that there were a lot of tenants in the same building and that the part of the building into which they went was not Washington's home. The witness stated that he and his associate officer had seen the same persons going in and out of the building and almost every time it would be at 12 noon and 5 P.M. and 9 P.M., and that they had had the place under surveillance for a week; *Page 866 
that they had no search warrant; that he and his partner entered the front door of the building, which was a common entry for the tenants, and together they entered a hall about 25 feet long; that there was a door standing open and they could hear voices of persons coming from the basement that they descended the basement stairs, about 15 steps, and as they stopped on the stairs they looked into the basement and saw a group of individuals seated on benches and others on chairs and that they had policy papers; that he was then only a few feet away; that defendant Joe Simon was seated on a bench at the south wall of the building near a table and was writing on something; that he arrested Simon and searched him and that Detective Geile, Officer Griffin's partner, seized from Simon's hands one policy writer's note book containing an original top sheet and two carbon copies and books 1818 and 2019; that all of the individuals in the basement room at that time were arrested. The officer gave testimony concerning the conduct, position and statements of the other individuals because the court was also hearing at that time, without objection, the motions of other defendants to suppress evidence.
[5] The defendants in other cases who were convicted and whose appeals were argued along with this appeal in this court were Morris Washington and Roy Ward. Each of said persons was charged in a separate information filed in the same court with violation of the same City Ordinance on the same day and at the same time and place as was charged in the information filed in this case against Joe Simon.
[6] Officer Griffin further testified that when he entered the building at the time in question he had an idea whom he would run into. The court overruled the several defendants' motions to suppress the evidence and then heard the cases on their merits.
[7] Officer Griffin continuing with his testimony stated that on the table at which Morris Washington was seated there were policy papers and policy books and some policy drawings; that among the papers were the take book containing the original sheets and two carbon copies; then there was the play 2099 and number 5, and the records from ten policy books amounting to $28.90 and twelve policy original top sheets; that Roy Ward was seated on the bench with defendant Joe Simon and Ward also was arrested and searched; that they found on Ward one policy writer's note book marked on the back 79 and 2099.
[8] With respect to defendant Simon the officer testified:
[9] "Q. Did you see anything in his possession or in front of him? A. Yes, sir.
[10] "Q. In the way of policy gambling paraphernalia? A. Simon had his knees full and on his knees he had a policy book in which he was writing.
[11] "Q. Have you that book? A. Yes, sir.
[12] "Q. Look at that book, Officer Griffin, and is that the book you found you say Simon was writing in? A. Yes, sir.
[13] "Q. Is that what is commonly known as the Policywriter's book? A. Yes, sir."
[14] The book last referred to was marked City's Exhibit No. 1 in this Simon case.
[15] The officer was asked if defendant Simon had made any statement about the policy writer's book which was found on him at that time. Defendant objected to this question on the ground that any statement made by Simon would be irrelevant and immaterial and for the further reason that any admission made by Simon was not admissible because the corpus delicti had not been established. The court overruled the objection and the witness answered: "A. Simon stated that he has been writing policy in Book No. 9 for the Royal Policy Company since last May, 1947, and he stated that the book that I had mentioned before was his policy book and that the top sheets bearing Class No. 2099, bore a recording of the policy he had wrote that morning for the drawing by the Royal Company, and he wrote those bets for different people he had met on the street, and that he was preparing to turn the book in at the time we entered and made the arrests."
[16] Continuing the witness further testified:
[17] "Q. Did he say how long he had been writing policy for the Royal Company? A. Since May, 1946. *Page 867 
[18] "Q. Did he say how much his commission was? A. He stated he received thirty cents commission on every dollars worth of bets he would write, and said he wrote for the three drawings every day, at 12:00 Noon, 5:00 P.M. and 9:00 P.M."
[19] At this point defendant moved that all of the testimony of the witness Griffin pertaining to the witness' interpretation of the exhibits and particularly certain exhibits that were introduced in the case of City v. Morris Washington be stricken from the record on the ground that they were irrelevant and immaterial and a conclusion and interpretation on the part of the witness. The court overruled the objection, stating that such testimony had been admitted on the theory that the officer had qualified as an expert on policy and lottery. 223 S.W.2d 858.
[20] Officer Griffin testified as an expert on policy and lottery, describing the game of policy and its operation. He stated that it is a means of gambling and betting money on certain numbers that will be drawn in a lottery; that the lottery result ballot is a slip of paper which has three columns of numbers on it, one column having twelve numbers known as the policy column short side; that the center column has six numbers known as the Cyclone and the third column twenty numbers known as the Bungaloo; that on the top of the result ballot is the number known as the class number which identifies the drawing as being held; that the result ballot has been prepared by the operator of the lottery who selects the number of his own choice to print on the result ballot; that there are any number of individuals who play policy; that the policy writers go out on the street and make contacts; that if anyone wished to play policy he would see the policy writer and tell him the numbers he was selecting on which he wanted to make a bet; that the bettor could select various combinations of numbers to bet on; that the policy writer would write in his policy book the numbers selected and the amount of money bet thereon; that City's Exhibits Nos. 1 and 2, which were introduced in evidence, were such policy books.
[21] Officer Griffin further describing the game of policy stated that after the policy writer takes the money for betting and records it the drawings take place at designated hours and the policy writer reports into the meeting where he meets the manager and he turns in his original top sheet and carbon copies of the originals with the money he has accepted as bets; that the top sheet is the original sheet having the original recording of the bet; that he writes those top sheets from his policy book; that he turns in to the manager the original top sheet and one carbon copy sheet; that the manager retains as his record the carbon sheet and sends in to the company the original top sheets; that after all of the policy writers make these returns in to the manager there is a man known as the pickup man who contacts the different managers and picks up from them the top sheets for a drawing and then the pickup man goes to designated spots where he meets the operator of the policy company or a man working for the operator and the pickup man then gives to the company man the top sheets and the company man, in turn, gives the result ballots to the pickup man; that the pickup man goes back and recontacts the persons with whom he is dealing and gives them the result of the drawing and those result ballots are the numbers that have been drawn.
[22] Officer Griffin was asked: "Q. And assuming that I had made there a certain combination of numbers that appears in the result ballot then I would win some certain amount of money, is that correct?" He gave the following answer: "A. If the numbers you selected to bet on appears in or on the result ballot in the column in which they are designated there as having been paid then you would win."
[23] The City introduced in evidence the City Ordinance involved as well as the various papers and books which the officer had identified as having been seized in the room where the arrests were made, and also introduced the papers, books and articles taken from the defendant, all pertaining to the game of policy.
[24] Defendant contends that the court erred in refusing to sustain his motion to suppress *Page 868 
the evidence and argues that the evidence in support of his motion proved that the search of the defendant and the seizure of the evidence were unreasonable and violative of defendant's constitutional rights and that the officer, therefore had no right to search him or to seize evidence which he had in his possession at that time. We are unable to agree with defendant's views on this point.
[25] At first glance defendant's contention may appear to raise a constitutional question of which our Supreme Court under Article V, Section 3 of the Constitution of Missouri would have exclusive jurisdiction on appeal. Said Section of the Missouri Constitution provides: "The supreme court shall have exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the United States or of this state * * *." However, our Supreme Court has held that the right of arrest by police officers in the City of St. Louis under Section 7691, R.S.Mo. 1939, Mo. R.S.A. § 7691 is lawful when the police officers have reasonable grounds to believe that an offense against the law has been committed by the person arrested. State v. Humphrey, Mo.Sup., 217 S.W.2d 551, 553. To the same effect are Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68; Wehmeyer v. Mulvihill, 150 Mo.App. 197, 130 S.W. 681; Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732. See also City of St. Louis v. Gavin, Mo.App., 222 S.W.2d 536, and City of St. Louis v. Gavin, Mo.App., 222 S.W.2d 531, in both of which cases opinions were handed down by this court on June 21, 1949. Furthermore, it has been held by our Supreme Court that where the arresting officer has reasonable grounds to believe the person arrested has committed an offense against the law, the officer may take from him articles of value as evidence. State v. Raines, 339 Mo. 884, 98 S.W.2d 580; State v. Williams, 328 Mo. 627, 14 S.W.2d 434; State v. Humphrey, Mo.Sup., 217 S.W.2d 551.
[26] It has also been held in numerous cases by our Supreme Court that when that court has once determined the precise constitutional question raised in a case wherein the courts of appeals would otherwise, absent such constitutional question, have jurisdiction, the Supreme Court will not thereafter assume jurisdiction of the cause on account of the constitutional question mooted. Dickey v. Holmes, 208 Mo. 664, 106 S.W. 511; Turner v. Tyler Land Timber Co., 259 Mo. 15, 167 S.W. 973, 975; State v. Finley, 259 Mo. 414, 168 S.W. 921: State v. Swift Co., 270 Mo. 694, 195 S.W. 996.
[27] On the record now before us and under the decisions of our Supreme Court, supra, we hold that no constitutional question is involved and that this court has jurisdiction of the appeal.
[28] We are of the opinion that under the evidence shown herein the police officers had not only reasonable grounds but had clear, strong grounds for believing that defendant was engaged in violation of the law at the very time of his arrest. From the description of the game of policy given by Officer Griffin it is obvious that the game is not conducted by one person alone but by several persons, each of whom is a necessary link in the chain used to carry on the game. The lawmakers undoubtedly, knowing that no one person alone establishes or conducts the game, made it an offense for anyone to "make or establish or aid or assistin making or establishing any lottery, gift or enterprise, or scheme of drawing in the nature of a lottery." (Emphasis ours). Ordinance of the City of St. Louis No. 41386, Section 1677. See State v. Wilkerson, 170 Mo. 184, 70 S.W. 478.
[29] The police officers not only had reasonable grounds to arrest defendant and his associates, but in our opinion would have been derelict in their duty had they not done so under the circumstances shown in the evidence. The defendant and his associates were actually "caught in the act" of violating the law. The police officers, being familiar with the surreptitious manner in which the game of policy is carried on, saw overwhelming evidence before their eyes of the fact that defendant was at the very moment of his arrest aiding and assisting in carrying on the game of policy. *Page 869 
It is unnecessary to repeat that evidence here. The arrest of the defendant without a warrant was, therefore, a lawful one, and under the decisions of our Supreme Court, supra, it follows that the search of defendant's person and the seizure of the evidence mentioned also were lawful.
[30] The numerous cases cited by defendant on this point have no application to the situation before us. We hold that the court did not err in overruling defendant's motion to suppress the evidence.
[31] Defendant makes the point that the court erred in admitting into evidence the testimony of Officer Griffin as to certain admissions made by defendant at the time of his arrest for the reason that the corpus delicti had not been established. It is obvious from defendant's argument on this point that he is in error as to what constitutes the corpus delicti (the body of the crime) in this kind of a case. The officer's testimony showing what the defendant and his associates were doing when the officers entered the basement room, together with the various policy books and papers which each of the men, including defendant Simon, was handling at the time showed that defendant was aiding and assisting in the conduct of the game of policy at that time.
[32] In the case of State v. Skibiski, 245 Mo. 459, 463, 150 S.W. 1038, our Supreme Court said: "The rule in this state has long been that full proof of the corpus delicti, independently of the confession, is not required. If there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with circumstances related in the confession, both the circumstances and the confession may beconsidered in determining whether the corpus delicti is sufficiently proved in a given case." (Emphasis ours.) The rule in the Skibiski case, supra, applies with equal force to statements made by a defendant as well as to confessions. See State v. Mullinix, 301 Mo. 385, 257 S.W. 121; State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523; State v. Kauffman, 329 Mo. 813,46 S.W.2d 843; State v. Knowles, 185 Mo. 141, 83 S.W. 1083. See also State v. Arndt, Mo.Sup., 143 S.W.2d 286, 287, where the Supreme Court quoting from State v. Thompson, 333 Mo. 1069, 64 S.W.2d 277, 282, said: "The rule in this state is that full proof of the corpus delicti independent of the defendant's extrajudicial admissions is not required. On the contrary, what seemed to be only slight corroborating facts have been held sufficient. State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523. Neither is it essential that all the independent proof of the corpus delicti came first in the order of proof. 7 R.C.L. § 6, page 778; 16 C.J. § 1514, page 737."
[33] The overwhelming evidence of the defendant's participation in aiding and assisting in the conduct of the game of policy which the officer found upon entering the room in the basement mentioned, together with defendant's own statements as to the part he was playing in the game, were amply sufficient to justify the court in admitting the statements objected to by the defendant. We hold that the court did not err in admitting the evidence of the statements in question.
[34] Defendant next contends that the court erred in failing to sustain his motion for the dismissal of the charge at the close of the City's case on the ground that the City had failed to make a case against him. This general complaint against the action of the court is not supported by any authorities in defendant's brief and is completely answered by what we have heretofore said in relation to the overwhelming proof that was shown of defendant's participation in the conduct of the game of policy. We say "overwhelming proof" advisedly for such proof includes defendant's own statements showing his guilt which were properly and lawfully admitted into evidence by the court.
[35] We hold that the evidence was amply sufficient to justify defendant's conviction and there being no error shown in the trial court's procedure, the judgment of the Court of Criminal Correction is affirmed.
[36] ANDERSON, P. J., and HUGHES, J., concur. *Page 870