James LeRoy COCHRAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16686.

United States Court of Appeals
Eighth Circuit.

June 28, 1961.

Rehearing Denied Aug. 7, 1961.

Norman S. London, St. Louis, Mo., for appellant.

Frederick H. Mayer, Asst. U. S. Atty., St. Louis, Mo., for appellee; D. Jeff Lance, U. S. Atty., St. Louis, Mo., on the brief.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

James LeRoy Cochran, appellant herein, was charged by indictment with armed robbery of the Roosevelt Federal Savings and Loan Association of St. Louis, Missouri. (18 U.S.C.A. § 2113) Upon being found guilty by a jury, he was sentenced to imprisonment for twenty years. Appellant's conviction was partially based on the use in evidence against him of a gun seized from the place of his arrest. Before trial, and pursuant to Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A., appellant moved to suppress as evidence any and all items seized and secured from his person or from the place of his arrest, claiming that such items were the products of an illegal search and seizure without warrant, that there was no probable cause for the appellant's arrest or for the search and seizure and that the arrest, search and seizure violated the appellant's rights as contained in the Fourth and Fifth Amendments to the Constitution.

After hearing, the District Court overruled the motion to suppress and during

634

the trial, over objection, received in evidence the gun referred to.

It is the appellant's contention that the police officers did not have "probable cause" to arrest him, that they had no warrant for arrest and no search warrant, and that hence the search and seizure of the gun, etc., was illegal and the denial of the motion to suppress error.

The evidence offered at the hearing on the motion to suppress is without substantial dispute. On May 27, 1960, the Roosevelt Federal Savings and Loan Association, an institution organized and operated under the laws of the United States, was held up by a lone gunman and robbed of $1,109 by placing in jeopardy the lives of employees therein.

Appellant was arrested on June 6, 1960. The apartment in which the arrest occurred was searched. The police officers making the arrest had no warrant therefor and no warrant for the search that followed. A gun, marked Exhibit No. 5, was found in the apartment and was subsequently identified by witnesses as being similar to one used by the robber. The police officers testified concerning the condition of the appellant at the time of his arrest, that is, that he was dressed in shorts and was concealing himself from the officers by hiding in a closet; that in the search of the apartment they found car keys which fit a Mercury automobile parked out in front.

The officers conceded that at the time of arrest they observed no crime being committed. They testified that they were acting upon information supplied by a confidential informant to the effect "That James LeRoy Cochran may be good for a hold-up of the Roosevelt Federal Savings and Loan." The informant also told them the approximate location of Cochran's residence and that he had a car of the type they were looking for. This confidential information was given to Detectives Kube and Lask several days prior to the actual arrest. Kube and Lask made no police report concerning the information. They conveyed the information to no one, although they made daily reports of their activities.

■ The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The protection thereby afforded extends alike to all persons, the unjust as well as the just, and the guilty as well as the innocent. Its cloak is a protection from unreasonable searches and seizures and no arrest or seizure without a warrant is legal except on "probable cause". If probable cause existed, then the arrest and search of the premises incidental thereto were lawful. Under such circumstances a motion to suppress would have been properly denied. Henry v. United States, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134; Draper v. United States, 1959, 358 U.S. 307, 310, 311, 79 S.Ct. 329, 3 L.Ed.2d 327, and cases therein cited.

What knowledge on the part of the arresting officer meets the test of probable cause has been the subject of many definitions. Stacey v. Emery, 1878, 97 U.S. 642, 645, 24 L.Ed. 1035:

"* * * If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been committed, it is sufficient. Whether the officer seized the occasion to do an act which would injure another, or whether he moved reluctantly, is quite immaterial.

"Mr. Justice Washington * * * in Munns v. Dupont [3 Wash.C.C. 31, 37, Fed.Cas.No.9,926], * * * defines probable cause in these words: 'A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the be-

*lief that the party is guilty of the offence with which he is charged.'*

"Chief Justice Shaw defines it in similar language: *'Such a state of facts as would lead a man of ordinary caution to believe, or to entertain an honest and strong suspicion, that the person is guilty.'* Ulmer v. Leland, 1 Me. 135." (Emphasis supplied.)

Director General of Railroads v. Kastenbaum, 1923, 263 U.S. 25, 28, 44 S.Ct. 52, 53, 68 L.Ed. 146:

" * * * good faith is not enough to constitute probable cause. That faith must be grounded on facts within knowledge of the Director General's agent, which in the judgment of the court would make his faith reasonable."

Of similar comport are the statements of Mr. Justice Douglas in the more recent case of Henry v. United States, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 171:

"Evidence required to establish guilt is not necessary. Brinegar v. United States, 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879]; Draper v. United States, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327]. On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."

On the issue of probable cause, the government cites but one case as being analogous to that at bar, Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329. Therein, the Supreme Court held that the arresting officer had "probable cause" under the Fourth Amendment and "reasonable grounds" under 26 U.S.C. (Supp. V) § 7607, added by § 104(a) of the Narcotic Control Act of 1956, 70 Stat. 570. The following circumstances were established at the hearing on the motion to suppress: For about six months one Hereford had been engaged as a "special employee" of the Bureau of Narcotics and from time to time gave information to narcotic agent Marsh regarding violations of the narcotic laws. Hereford was paid small sums of money therefor and Marsh had always found the information given by Hereford to be accurate and reliable. On September 3, 1956, Hereford told Marsh that James Draper had taken up abode at a stated address in Denver and "was peddling narcotics to several addicts" in that city. Four days later Hereford told Marsh "that Draper had gone to Chicago the day before by train [and] that he was going to bring back three ounces of heroin [and] that he would return to Denver either on the morning of the 8th of September or the morning of the 9th of September also by train." Hereford gave Marsh a detailed physical description of Draper and of the clothing he was wearing and said that he would be carrying "a tan zipper bag" and that he habitually "walked real fast". The Supreme Court, through Mr. Justice Whittaker, held, 358 U.S. at page 314, 79 S.Ct. at page 331:

"We believe that, under the facts and circumstances here, Marsh had probable cause and reasonable grounds to believe that petitioner was committing a violation of the laws of the United States relating to narcotic drugs at the time he arrested him. The arrest was therefore lawful, and the subsequent search and seizure, having been made incident to that lawful arrest, were likewise valid."

In Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the Supreme Court was again dealing with the question of "probable cause" and "reasonable grounds" there, however, for the issuance of a search warrant. The sole evidence upon which the search warrant was issued was an affidavit signed by a detective to the effect that the unnamed informer had told him that the petitioner and another "were involved in the illicit narcotic traffic" and "kept a ready supply of heroin on hand" in the apartment, that the informer claimed to have purchased narcotics at

the apartment from the petitioner on many occasions, the last of which had been the day before the warrant was applied for; that the informant "has given information to [the detective] on previous occasion and which was correct"; that "this same information" regarding petitioner had been given the narcotics squad by "other sources of information"; and that the petitioner and the other implicated by the informant had admitted being users of narcotics. Therein, the Supreme Court, citing and following Draper, concluded that hearsay could be the basis for the issuance of a warrant provided it was "reasonably corroborated by other matters within the officer's knowledge". The Supreme Court stated, 362 U.S. at page 271, 80 S.Ct. at page 735:

> "* * * The informant had previously given accurate information. His story was corroborated by other sources of information. And petitioner was known by the police to be a user of narcotics. Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history."

It is the government's contention that under the circumstances here the police officers also had "probable cause" to arrest the appellant. We do not think either Draper or Jones is authority for the government's contention. Against the basis for probable cause there, the information had by the police officers here pales into mere suspicion: Detectives Kube and Lask were told by an unknown informer that James LeRoy Cochran "*may* be good for a hold-up of the Roosevelt Federal Savings and Loan." (Emphasis supplied.) They were told the type of car he was driving and the approximate location at which he lived. At the hearing to suppress, the District Court refused to allow the identity of the unknown informer to be disclosed so that inquiry could be made into his reliability or the basis for his statement. To sustain this would be to say that probable cause for arrest, search and seizure can be found in the unsubstantiated suggestion of a perfect stranger that Cochran *may* be good for the hold-up. This finger of suspicion was completely uncorroborated excepting by a very vague description of the robber and that a "light-colored", "tan", "beige" or "white" car (a Ford, according to one witness, and a 1952 or 1953 Mercury, according to another) was seen at or near the place of the robbery and that Cochran drove a light-colored Mercury. The unknown informant did not even claim that Cochran committed the robbery, only that he "may be good for" it. The officers had no information or evidence upon which they could have taken an oath, had they gone before a magistrate requesting a warrant for Cochran's arrest. They did not know the grounds on which the unknown informer based his suspicion and the District Court allowed no inquiry thereinto. The officers acted solely on the informant's suspicion. Mere suspicion is not enough. Stephens v. United States, 1959, 106 U.S.App.D.C. 249, 271 F.2d 832, 833, 834. Moreover,

> "* * * An uncorroborated tip by an informer whose identity and reliability are both unknown does not constitute probable cause to make an arrest." Contee v. United States, 1954 [94 U.S.App.D.C. 297], 215 F.2d 324, 327.

The government attempts to point out that the identity of the informant, that is, the source of the information relied on by the police officers here, was unimportant to appellant's defense and therefore not to be disclosed, citing United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650–652, and cases listed therein. This, however, is not the point relied on by appellant. Here the primary question is not the informer's identity but his reliability or credibility as bearing upon the issue of probable cause. Did the officers have probable cause? If, in resolving this question on the motion

to suppress, it becomes necessary to disclose the informant's identity in order to establish his reliability and the resultant probable cause for the arrest, such disclosure may be called for. In this regard, the Supreme Court has said:

" * * * Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant *unless there was sufficient evidence apart from his confidential communication.*" (Emphasis supplied.) Roviaro v. United States, 1957, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639.

■ The government would bolster probable cause by " * * * the fact that when the police officers arrived at the apartment and knocked on the door announcing themselves as police officers and thereafter gaining entrance and found the appellant hiding in the apartment closet certainly gave officers probable cause to place him under arrest." That is but to assert the point of view that the end justifies the means. No unlawful arrest or unlawful search can be turned into a lawful one by the results of its own illegality. In United States v. Di Re, 1948, 332 U.S. 581, 595, 68 S.Ct. 222, 228, 92 L.Ed. 210, Mr. Justice Jackson referred to

"The Government's last resort in support of the arrest is to reason from the fruits of the search to the conclusion that the officer's knowledge at the time gave them grounds for it. We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."

In Johnson v. United States, 1948, 333 U.S. 10, 16, 68 S.Ct. 367, 370, 92 L.Ed. 436, Mr. Justice Jackson, again speaking for the Supreme Court on the same question, said:

"The Government, in effect, concedes that the arresting officer did not have probable cause to arrest petitioner until he had entered her room and found her to be the sole occupant. * * *

"Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law."

We hold that here there was an utter failure to show probable cause justifying the arrest and that accordingly the motion to suppress should have been granted. Because the case must be reversed and remanded for a new trial, we find no occasion to comment on appellant's additional claims of error.