Lem PIGG, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17624.

United States Court of Appeals
Eighth Circuit.

Oct. 15, 1964.

Donald V. Fraser, Jr., St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES and RIDGE, Circuit Judges, and HANSON, District Judge.

MATTHES, Circuit Judge.

Lem Pigg, Jr. was found guilty by a jury of violating Title 18 U.S.C. § 659,[1] and has appealed from the judgment of conviction under which he was imprisoned for a period of ten months.

The sole question for determination is whether there was probable cause for the arrest and the resulting seizure of the evidence on which the conviction rests. A timely motion to suppress the evidence was interposed by appellant and denied by the District Court.[2]

The Government established that during the night of December 26, 1963, at least one box or carton of shoes destined to St. Helena, Oregon, was stolen from a truck belonging to Triangle Express and Transfer Company, in the City of St. Louis, Missouri.

---

1. The information charged that Lem Pigg, Jr., had in his possession one carton containing six pairs of men's shoes, of the value not exceeding $100.00 which had been stolen from a truck in interstate commerce and that Pigg knew at the time of his possession, that the shoes had been stolen.

2. As the Government recognizes since Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) and Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), evidence obtained by a state officer as the result of an arrest violative of the Fourth Amendment is inadmissible in a federal prosecution.

The only direct evidence on the issue of probable cause is found in the testimony of the arresting officer, a member of the Metropolitan Police Force of the City of St. Louis, Missouri. This officer, Herman Ubben, testified that about ten-fifty o'clock p. m. on December 26, 1963, while on a routine patrol, he saw appellant, known to Ubben to be a "noted thief," walking westwardly on the north side of Biddle Street between Twelfth and Thirteenth Streets in the City of St. Louis and about three and one-half (3½) blocks from the parking lot of Triangle Express and Transfer Company. Appellant was carrying a box and when Ubben stopped his automobile about two feet from appellant, he observed a label on the box upon which appeared the words "International Shoe Company." At that time Ubben was wholly ignorant of the theft from the interstate shipment. Ubben then had this colloquy with appellant: "I asked, where are you going with the box, Lem, where did you get it? He said, I found it; I said, I bet you stole it, and he said, I wouldn't doubt it." The officer's testimony does not establish with exactness the time of the arrest as related to seizure of the box, but the officer did state without equivocation that he did not observe that there was another "seal" on the box with the words appearing thereon, "St. Helena, Oregon," until after he had "questioned him and taken the box into his custody." Appellant was taken to the police station where the box was opened and six pairs of shoes found therein.

From cases which have considered the question before us, there has emanated guidelines and standards which are to be applied in determining whether, under the facts and circumstances presented, probable cause existed.[3] Thus, in Brinegar v. United States, 338 U.S. 160, 175, 176, 69 S.Ct. 1302, 1310, 1311, 93

L.Ed. 1879 (1949), this pronouncement appears:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543]. 276 U.S. at page 161 [45 S.Ct. at page 288, 69 L.Ed. 543]. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543]."

The same basic principles were recognized by the Supreme Court in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), which also involved a prosecution under 18 U.S.C. § 659, and where upon more persuasive

---

**3.** See in addition to cases discussed in this opinion: Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Mueller v. Powell, 8 Cir., 203 F.2d 797 (1953); Hawkins v. United States, 8 Cir., 288 F.2d 537 (1961), cert. denied, 366 U.S. 975, 81 S.Ct. 1943, 6 L.Ed.2d 1264 (1961).

facts than this record presents, the Court held that the officers did not have probable cause for the arrest, the search was illegal and the articles seized were not admissible in evidence.

■ From the teachings of the Supreme Court, it is evident that the key question presented in cases of this nature is whether the information possessed by the arresting officers was sufficient to constitute "probable cause" as opposed to "mere suspicion." [4] This issue, factual in nature, must be resolved from the facts and circumstances of each particular case, Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302 (1949); Washington v. United States, 105 U.S. App.D.C. 58, 263 F.2d 742, 744 (1959) citing cases; Hawkins v. United States, 8 Cir., 288 F.2d 537, 541 (1961), cert. denied, 366 U.S. 975, 81 S.Ct. 1943 (1961); Mueller v. Powell, 8 Cir., 203 F.2d 797 (1953). We turn then to the question, whether prudent men in the shoes of Officer Ubben would have seen enough to permit them to believe that appellant was violating or had violated the law.

To support the arrest and seizure, the Government relies upon the following circumstances: (1) the time of the arrest; (10:50 p. m.) (2) the place of the arrest; (about three and one-half blocks from the area where trucks were parked) (3) appellant's reputation; (4) the appearance of the name "International Shoe Company" on the box; (5) the statement made by the appellant to the officer prior to his arrest.

■ But there are other facts, equally pertinent which cannot be ignored. To enumerate, Officer Ubben was wholly ignorant of theft from the interstate shipment and, of course, was not engaged in investigating the offense as were the officers in Henry, supra. Appellant made no attempt to flee from the

officer or to escape arrest. The contents of the box did not become known to the officer until sometime after the arrest and even then he was unaware that the shoes had been stolen from an interstate shipment. Seemingly, the colloquy between appellant and Officer Ubben, wherein appellant in response to the suggestion, "I bet you stole it," replied, "I wouldn't doubt it," is regarded as supplying the final link in the chain of circumstances relied upon to establish probable cause. We are not persuaded to believe however, that the statement made by appellant is entitled to be recognized as a direct admission, so as to supply the deficiency which was obviously existing when such statement was made. The authorities lend support to this conclusion.

In Brinegar v. United States, supra, where the arrest and search were sustained, no expression whatever appears in the opinion of the majority as to the weight, if any, which was accorded to this colloquy between one of the agents and the accused; "Hello, Brinegar, how much liquor have you got in the car this time," and the reply "not too much" or "not so much."

Also pertinent to the materiality of the statement made by appellant is United States v. One 1956 2-Door Chevrolet, 8 Cir., 275 F.2d 240 (1960). There, after suppressing as evidence the liquor involved on the grounds of illegal search and seizure, the Court acquitted the defendants of the charge of attempting to transport intoxicating liquor from Missouri to Oklahoma (then a dry state.) The Government had also instituted forfeiture procedures under 18 U.S.C. § 3615 against the liquor and against a Chevrolet automobile which the Alcohol Tax Unit Agents had seized in connection with the liquor. From an adverse judgment in the forfeiture case, the government appealed to this Court and one of its contentions was that the trial court

---

4. Standing for the propositions that mere suspicion is not enough: Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407 (1963); Feguer v. United States, 8 Cir., 302 F.2d 214, 245, 246, 247, 248 (1962); Cochran v. United States, 8 Cir., 291 F.2d 633, 636 (1961); Hawkins v. United States, 8 Cir., 288 F.2d 537, 540 (1961), cert. denied, 366 U.S. 975, 81 S.Ct. 1943 (1961).

had improperly failed to take into account admissions made by Frank Banfield, one of the accused parties, to the liquor agents as found in this conversation:

"Q. 'Frank, why do you stick your neck out like this?'

"A. 'I don't know, I guess I don't know any better.'

"Q. 'How far do you ordinarily go with these fellows?'

"A. 'About two miles.'

"Q. 'Why don't you let them start from your store?'

"A. 'I don't know, I don't believe I ought to be in this business.'"

We observed, 275 F.2d 243, that the trial court had "recognizingly" stated:

" 'Hardesty's residence, and Banfield's statements, may create a suspicion that ultimately the liquor in question would have reached Oklahoma, but doesn't at the time of the search and seizure and subsequent arrest of Banfield and Hardesty, establish that they were then actually engaged in attempted transportation of liquor that can be declared contraband.' "

Our appraisal of the trial court's finding was:

"Thus, the court regarded the conversation as not constituting or implying any such intended or direct admission in respect to the particular transportation as to be persuasive of violation, or in overall consideration to require such an appraisal of what had been done in the situation, with its lack of objective elements of seeming probability at the time." 275 F.2d at 243.

In affirming, we took occasion to observe: "we think the recent decision of the Supreme Court in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134, lends support to the conclusion which he [trial judge] reached."

■ Further discussion is unnecessary. We cannot escape the conclusion that this is another case where an attempt is made to establish probable cause by the fruits of the search and seizure and by other after-acquired information, a practice long condemned. Henry v. United States, supra, 361 U.S. at page 98, 80 S.Ct. 168; Johnson v. United States, 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Without such post-arrest information, it clearly and unmistakably appears that the arrest stemmed from mere suspicion; it was not based upon information which would warrant a reasonable prudent person in believing that appellant was violating or had violated the law. As a consequence, appellant's motion to suppress should have been granted.

Reversed and remanded.

RIDGE, Circuit Judge (dissenting).

This appeal deals with "clashing interest of public order and individual rights." Constitutionally considered, I think the former prevails.

Appellant was arrested by an officer of the Metropolitan Police Force of the City of St. Louis, Missouri, while committing a crime; i. e. he was in possession of asportative chattels—a wrapped, sealed box with the name "International Shoe Company" plainly visible to the eye. He was arrested and subsequently charged by Information with violating Title 18 U.S.C.A. § 659. At his trial thereon, substantial competent evidence was adduced to establish appellant's guilt. Appellant offered no evidence in defense of the charge made against him.

Standing on a "motion for judgment of acquittal" made at the close of the Government's case, appellant's sole assignment of error before us is that his conviction cannot stand "because of (an) illegal search and seizure in the first instance, and (his) following unlawful arrest." As a consequence, he contends, "all the evidence (adduced by the Government at his trial) should have been

suppressed"[1] (par added) and his motion for acquittal should have been sustained. He seeks reversal of his conviction on that singular premise.

Under the undisputed facts and applicable law as I perceive it, appellant's conviction is not constitutionally illegal and I must respectfully dissent from a reversal thereof.

Officer Ubben, a St. Louis, Missouri police officer, was patrolling his assigned police district in a patrol car late at night. As he approached appellant on a public street in a semi-mercantile residential neighborhood, he observed that appellant was carrying a large wrapped, sealed package. Officer Ubben knew appellant had the reputation of being a "noted thief." Ubben pulled up and stopped his police car within two feet of appellant for the purpose of making a routine investigation. At that time he saw the words, "International Shoe Company," labeled on the box appellant was carrying. He then said to appellant, "Where are you going with the box, Lem, where did you get it?" Lem said, "I found it." Ubben said, "I bet you stole it." Lem said, "I wouldn't doubt it." Officer Ubben then told appellant to "put the box down." *Notice*, appellant did not then, or at any other time, make claim that the box he was carrying was rightfully his. To the contrary, after he was arrested and the package he was carrying was "seized" by his arresting officer, he told the latter: "I stole it from some other guys, I saw some other guys put it down, I picked it up when they left." Manifestly, such statement, though voluntarily made, cannot be related back to probable cause for appellant's "arrest" or "seizure" of the box he was carrying, but it certainly can be related to probable cause for the "search" here considered.

The only conclusion I can reach from the above-stated fact is that Officer Ubben lawfully "arrested" appellant and contemporaneously therewith made "seizure" of the box appellant was carrying,

incidental to such arrest. I think that must be so when it is considered that the law of the State of Missouri is that a St. Louis, Missouri police officer's merely interrogating a person in the course of a routine investigation, outdoors at night, does not rationally constitute an "arrest," though the person interrogated may be momentarily detained. Cf. State v. Evans, 161 Mo. 95, 61 S.W. 590, 593. Such is a recognized duty of a St. Louis, Missouri police officer under Section 84.090 V.A.M.S. Hence the "arrest and seizure" here considered could only have occurred simultaneously, after the first conversation supra took place and when Officer Ubben told appellant to "put the box down." Cf. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); State v. Monroe (Mo.App.) 289 S.W. 29 (1946).

The "search" leading to appellant's prosecution occurred thereafter, for it is Officer Ubben's testimony that after the above conversation took place, he then got out of his patrol car, looked more closely at the box, turned it around and read a label thereon revealing it was addressed to a "Nikolas" company, St. Helena, Oregon." Thereafter, he had the subsequent conversation with appellant.

> "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things *connected with the crime as its fruits* or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. * * * Such searches and seizures naturally and usually appertain to and attend such arrests." (Emp. added.) Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 (1925).

A police officer of the City of St. Louis, Missouri, by statutory authority may make an arrest without warrant when he has reasonable suspicion to believe that

---

1. His motion to suppress, made before trial, was denied.

an offense against the law has been, or is being, committed by the person arrested. Cf. City of St. Louis v. Washington (Mo.App.) 223 S.W.2d 858; City of St. Louis v. Simon (Mo.App.) 223 S.W.2d 864; City of St. Louis v. Ward (Mo.App.) 223 S.W.2d 847; State v. Humphrey, 358 Mo. 904, 217 S.W.2d 551. A bad reputation or a criminal record, although itself not reasonable ground for an arrest, is a circumstance that may be taken into consideration along with other surrounding facts in determining whether probable cause exists for an "arrest" and "seizure" contemporaneously made. Cf. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

The majority opinion considers that because Officer "Ubben was wholly ignorant (that) the theft from (an) interstate shipment" had occurred at the time he arrested appellant, such is a "pertinent (fact) which cannot be ignored." I do not think such knowledge was essential to sustain the "arrest" and "seizure" here considered; because Officer Ubben "[had] reasonable grounds to believe that the particular package" appellant "carried" was "contraband," i. e. stolen. "Its shape and design" and the "manner in which it (was) carried" were enough to create "reasonable suspicion" in the mind of Ubben that the box was stolen. Cf. Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 172. The statutory authority of F.B.I. officers and agents to make felony arrests without a warrant is not restricted to offenses committed "in their presence" but also to instances where they have " 'reasonable grounds to believe that the person arrested has committed or is committing' a felony." 18 U.S.C. § 3052. Henry v. United States, supra, l.c. 100, 80 S.Ct. 168. All that need be present in the mind of a police officer at the time he makes an arrest is "grounds of reasonable suspicion that (the arrested person has) committed an offense" against the law. Cf. Commission Row Club v. Lambert, 161 S.W.2d 732, 736 (Mo.App. 1942). It is apparent that "reasonable

suspicion" as there considered means more than "bare suspicion" condemned in the Brinegar case, supra, and is tantamount to "probable cause" as considered in Mueller v. Powell, et al., 203 F.2d 797 (8 Cir. 1953).

In the enlightening monographs by Professor John Scurlock on "The Law of Arrest in Missouri," and "Search and Seizure in Missouri," 29 Univ. of K.C. Law Rev., No. 2, Summer 1961, pp. 281–283, he has this to say about "arrest" and "search":

"An arrest, in order to justify a *search* without warrant, must meet certain qualifications. First. *The arrest must be a real, technical arrest.* The officer must have brought the suspect within the custody and control of the law for the actual or purported purpose of causing him to be committed on a criminal charge. The forcible detaining of a suspect while he is being searched may constitute 'an arrest' * * *. Furthermore, it seems obvious that since *necessity alone permits a search incidental to arrest,* an arrest cannot qualify to support a search unless the officer intended to arrest. * * Second. *The arrest must precede the search.* If the search comes first, it is unlawful although evidence is discovered which justifies an arrest. For most defendants the requirement that the arrest come first is academic because in case of dispute as to the order of arrest and search the word of the arresting officer will ordinarily be accepted as against the contention of the defendant. The constitutional guarantee forbids the making of a *search* before arrest, it does not always prohibit the *seizure* of goods prior to arrest. *When an officer sees goods subject to seizure, without having to make a search, he has the right to seize them. The order in which arrest and seizure of such visible articles occurs is not material.* Third. *The arrest must be lawful.* An arrest may be either with or without war-

rant of arrest, but it must be lawful independently and irrespectively of what is discovered by the *search;* it is axiomatic that *a search cannot relate back and* give validity to an arrest which was made on inadequate grounds. All good axioms have their exceptions or apparent exceptions. When an arrest is for a felony, *the effect of the rule against relating back is negated, by the rule that if in fact a felony has been committed, reasonable grounds exist as a matter of law for arresting whether the officer is aware of them or not.* Application of the latter rule produces a seeming paradox that while a *search* (without warrant) before arrest is unlawful regardless of what the search discloses, yet if an arrest upon (reasonable) suspicion is made before the search, *both the search and the arrest will be lawful if the search discloses the commission of a felony.* When the situation is examined penetratingly, it will be seen that the search does not really relate back and validate the felony arrest. The search merely proves that the arrest was lawful all along! Fourth. *The arrest must be made in good faith, that is, not for the sole purpose of creating an excuse to search.* This qualification presents difficult problems of proof. The illegality of an arrest being establishable on more or less objective bases, is more likely to be shown successfully than the *mala fides* of an arresting officer. The fact that the officer had a desire to search will hardly do the trick." (Some pars. and emphasis added. Footnote citations eliminated.)

In the light of the foregoing thesis, I do not consider appellant's *arrest and the simultaneous seizure* made in the case at bar to have been unlawful under Missouri or federal case law. The serious question in this case is whether the arrest preceded the "search." Manifestly, the arrest of appellant did precede the search, because there is no dispute that the latter occurred after Officer Ubben told appellant to "put the box down." That was before Officer Ubben got out of his patrol car. The *arrest and seizure* were then complete. Seizure of the box was justified because it was obviously sealed—a wrapped box—and visible thereon was the name "International Shoe Company" a well-known St. Louis firm. Reasonable facts were thereby established as probable cause for its *seizure.* The search took place later—after Officer Ubben got out of his patrol car and "turned the box around and saw the name 'Nikolas' Company, and address, St. Helena, Oregon," thereon.

Professor John Scurlock, in his monograph supra, at pp. 119–120, states:

*"The Effect of an Unlawful Arrest"*

"The illegality of an arrest has certain consequences. The most important in day-to-day police work is the illegality which an unlawful arrest imparts to a *search* incident to it. The evidence obtained thereby will be suppressed if the defendant makes timely motion. * * * Although the practical effect of the illegality of an arrest may be that the arrestee cannot be convicted because the essential evidence is suppressed, the decisions definitely do not establish that the unlawfulness of an arrest will of itself prevent conviction. *No case was found holding that the judgment of the trial court must be reversed merely on the ground of the unlawfulness of the arrest.* There is one situation in which it may seem that reversal follows from the illegality of the arrest but in reality it turns on a factor which happens also to void the arrest. This situation exists where the complaint upon which a warrant of arrest is issued and upon which the information is based is fatally defective so that both warrant and information are bad. The judgment is void not because the arrest cannot be maintained, but because the in-

formation fails." (Emp. added and footnote citations eliminated.)

The place of arrest determines its validity. In Ralph v. Pepersack, Warden, 335 F.2d 128 (4 Cir. 1964) it is said:

" * * * The existence of 'probable cause' is to be determined by the application of a practical, not a technical, standard. The meaning of the phrase has been so frequently stated as to require little elaboration here. (Citing cases.) Probable cause is something more than mere suspicion and something less than evidence which would justify a conviction. The essence of all definitions of probable cause for arrest is reasonable ground for belief that a crime has been committed and that the person arrested committed it. (Citing cases.) * * * No single litmus-paper test will provide the answer when probable cause is at issue; we look instead to the totality of the circumstances. And the pertinent circumstances are those of the moment, the actual ones, the ones that confronted the arresting officers. Officers patrolling the street at night do not prearrange the setting and they cannot judge events in the calm of an office. Things just happen, and as they happen the officers must choose to act or not. Our inquiry is whether their action was that of reasonable and prudent police officers in view of the circumstances as they appeared at the time of arrest." (l. c. 132.)

I think the circumstances existing in the nighttime on "Biddle Street between Twelfth and Thirteenth in the City of St. Louis, and about three and one-half (3½) blocks from the parking lot" of a transfer company, a semi-business-and-residential neighborhood where no contention is made that appellant was a resident and he did not say the "box is mine," established probable cause for Officer Ubben to arrest and seize the very apparent asportative box appellant had in his possession. Such constituted reasonable grounds for his "arrest" and the "search" that was thereafter made, in the light of all the circumstances here revealed.

Such facts reasonably considered do not, in my opinion, violate the Fourth Amendment provision against unreasonable search as considered in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L. Ed.2d 1688 (1960); or Wong Sun and James Wah Toy v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962) as appellant contends. As I read Rios v. United States, it is authority in support of the arrest, seizure and search here considered, as is Brinegar v. United States, supra; for all that was necessary was that "(t)he police must have reasonable grounds to believe that the particular package carried by the citizen is contraband," i. e. stolen. Henry v. United States, supra, 361 U.S. at p. 104, 80 S.Ct. at p. 172. The "stopping of the car" in United States v. One 1956 2-door Chevrolet, 275 F.2d 240 (8 Cir. 1960) was clearly without probable cause for the seizure and search there made. All that was shown to exist in that case was "bare suspicion" which is admittedly not enough.

I would affirm appellant's conviction.